THE PEOPLE, *ex rel.* Ayres, *vs.* THE BOARD OF SUPERVISORS
OF THE COUNTY OF FULTON.

Defects in substance need not be set up in the return to an alternative man-
damus. They may be taken advantage of at any time, after the return has
been made, before the peremptory mandamus is awarded.

The defendants may object to the sufficiency of the writ, on the argument of
a demurrer to the return.

Notwithstanding the act of 1848 provides that a reasonable compensation to
district attorneys for their services on the removal of criminal cases into
the supreme court by certiorari, *to be certified by one of the justices of the su-
preme court,* shall be audited and allowed by the board of supervisors, and
paid out of the county treasury, the board of supervisors has a *discretion* as
to the amount which they will allow; and are not controlled in that respect
by the certificate of the judge.

And if the board of supervisors has acted upon the subject matter, and exer-
cised its discretion in respect to an account, by allowing a part of the
amount, although it be less than that certified by a justice of the supreme
court, a peremptory mandamus will not lie, against them.

Nor would a mandamus be issued, in such a case, even if the board of super-
visors had no discretion in the matter; an action at law being the proper
remedy.

THIS was a demurrer to a return, made to an alternative writ
of mandamus. The writ bore date the 2d of June, 1851, and
was directed to the board of supervisors of Fulton county, nam-
ing each one individually. It stated, among other things, that
the relator, as acting district attorney for the county of Fulton,
in the year 1849, presented and exhibited to the board, and to
their committee, appointed to examine and report upon the dis-
trict attorney's accounts, when duly organized for such business,
at their annual meeting in November, 1850, his bill of charges
for services rendered in the year 1849. That such presenta-
tion was, upon due notice, and copy bill served on their clerk,
and was duly verified by the oath of the relator, as required by
law. That among other charges, was the following, to wit:
" To services in the case of The People v. Peter Schuyler, taken
to the supreme court, from a court of special sessions held in
said county, by Christopher Nellis, on certiorari, for noticing
the cause for argument, putting cause on the calendar, brief and
copies for members of the court, attending general term and

procuring affirmance of the judgment." That this charge was presented in duplicate copies, to one of which was a certificate as follows: "I certify that $45, would be a reasonable compensation for the above services. Albany, Nov. 3d, 1850."

(Signed)     "IRA HARRIS."

That to the other of said duplicates a like certificate was attached, bearing date November, 1850, and signed by Amasa J. Parker. That next following the certificate, as part of the said charge, were the following figures, to wit:

"$45,00

Deduct for allowance thereon by the board of 1849,     15,00

$30,00."

Which said sum of $15 was audited by the board in 1849; that the balance of $30 was presented to the defendants, and they were requested to audit and allow it, but they refused so to do. The writ directed the defendants, at their next annual meeting, to audit and allow the said balance of $30, to the relator, or to make answer to the court, why they had not done so. The return set forth that the relator did, in the year 1849, present to the board the item as stated in the writ, with other charges for his services that year; that they designated the Hon. John Wells, the county judge of said county, to tax the bill, who after due notice to the relator, proceeded to tax the same, and refused to allow the said item of $45, leaving the defendants to allow the said item and charge, or so much as they should deem proper, in their discretion. That they did, at their said annual meeting, in 1849, allow to the relator the sum of $15, which they believed to be a fair and just compensation for the services aforesaid. That after they were organized in 1850, the relator presented his bill for services rendered that year, and also the same item rendered in 1849, for the services mentioned in the writ, of $45, deducting $15, allowed by the defendants in 1849, and claiming the balance of $30; that the bill was referred to Judge Wells, who, after notice to the relator, and in his presence, taxed the same before the board; again disallowing the said item and the balance of $30, claimed thereon; that the defendants believing

they had made a fair allowance of $15, for the same, in 1849, rejected and refused to allow the residue of the charge, and the said balance of $30, so claimed as aforesaid; allowing and auditing the remainder of the bills as taxed by the judge; wherefore, it was that they refused to allow and still refuse to allow to the said relator for his said services the further sum and balance of $30. The relator demurred to this return, and the defendants joined in demurrer.

*A. H. Ayres,* relator, in person.

*M. & J. McMartin,* for the defendants.

*By the Court,* C. L. ALLEN, J. Where the facts on which the claim of the relator depends are in dispute, or the parties wish to bring the case before the court of dernier resort, an alternative mandamus is usually awarded. In such writ the relator is required to set forth his title, or the facts on which he claims a right to the relief sought by his application; and the defendant is required to do the particular act, or show why he has not done it. The writ performs the office of a declaration or complaint in other suits. In like manner, if the writ is not quashed, which it may be if defective in form or substance, the defendant is required to make a return; and if a return is made, it must either deny the facts stated in the writ, on which the claim of the relator is founded, or it must state other facts sufficient in law to defeat the relator's claim. (10 *Wend.* 25.) It is objected by the defendants, that the writ in this case is substantially defective, in not setting out a good title, inasmuch as it does not state that a certified copy of the certiorari had been served on the district attorney, with a certified copy of the affidavits on which it was allowed, and the return thereto, and that four days' notice of argument had been served. It is answered, that the defendants cannot be permitted to set up, on argument of the demurrer, that the services were not legally required or rendered; that the question should be raised by the return, if at all. This position is not tenable. In the *Com-*

*mercial Bank of Albany* v. *The Canal Commissioners,* (10 *Wend.* 25,) it was expressly decided, that after a return has been made to a writ, any defect in substance may be taken advantage of at any time before the peremptory mandamus is awarded. The material facts on which the relator founds his claim must be stated in the writ; otherwise the relator will be deprived of the power of traversing them; for the defendants are only bound to answer what is alledged in the writ. The defendants have a right, therefore, to object to the sufficiency of the writ. And the first question is, does it set forth a sufficient title? The first section of the act relative to the office of attorney general and district attorney, and to defray certain contingent expenses of the state officers, (*Laws of* 1848, *p.* 477, *ch.* 357,) declares, that "a certified copy of every certiorari, to remove into the supreme court a conviction had before a court of special sessions, together with a certified copy of the affidavits upon which the writ is allowed, and of the return thereto, shall be served, by the party presenting the writ, upon the district attorney of the county in which the conviction to be reviewed was had, with at least four days' notice of the argument thereof; and it shall be the duty of such district attorney, to attend to the argument of the same, *and perform such duties in relation thereto, as have heretofore been performed by the attorney general ; for which service, a reasonable compensation,* to be certified by one of the justices of the supreme court, shall be audited and allowed by the board of supervisors, and paid out of the treasury of the county." Before the passage of this act, it was the duty of the party prosecuting the writ of certiorari, to serve a certified copy of the certiorari, affidavit and return, upon the *attorney general,* with at least four days' notice of the argument thereof. (1 *R. S.* 713, § 48.) It was not made the duty of the attorney general, under that section, to notice the cause for argument; but among his general duties, he was undoubtedly required to *attend* to the argument in all such cases, which of course would be necessarily preceded by the preparation of a brief, points, &c. If the party prosecuting the writ, unreasonably delayed to notice, or bring on for argument,

the return to such writ, the court might enter a rule *to quash such certiorari.* (1 *R. S.* 719, § 57.)

The act of 1848 substitutes the district attorney for the attorney general, requiring the same papers and notice to be served on him, that were before required to be served on the latter officer, and makes it the duty of the district attorney "to attend to the argument of the same, and to perform *such duties in relation thereto* as have *heretofore been performed by the attorney general.*"

Now what does the writ set out in this case to show that the relator is entitled to the relief asked for? It states, that as acting district attorney in 1849, he exhibited before and presented to the board, and to their committee, his bill of charges for services rendered, during that year, to be audited and allowed; that such bill was duly verified; that among other items was the one in dispute, to which the certificate of a justice of the supreme court was annexed, and that he requested the balance of $30, to be audited and allowed, which the board refused to do. It does not state, except by inference, that a certified copy of the certiorari had been served on the district attorney, with a certified copy of the affidavit on which it was allowed, and the return thereto. It does not state that any notice of argument had been served. Now what duty had the relator to perform until these steps had been taken? Clearly none, by the act. It is said that the court sanctioned this practice by affirming the judgment. Suppose they did—and this can only be assumed by inference—was the relator authorized or required to pursue such a course? The act is silent on that subject; and a subsequent section, before referred to, points out the remedy in case the party prosecuting the writ unreasonably delayed, by providing that the court may quash the certiorari. It has been held that where a district attorney acts within the scope of his authority, and renders services for his principal, he is entitled to be paid both for his disbursements and services. (*People* v. *Van Wyck*, (4 *Cowen*, 260.) But the same case holds, that if services are rendered which are not provided for by statute, however meritorious, they are to be gratuitous, and

the party is not entitled to compensation. (*And see People* v. *Supervisors of New-York,* 1 *Hill,* 362, *and* 6 *Id.* 244.) So here, for aught that appears upon the writ, the whole services rendered were unnecessary, and were not in accordance with the act under which they are claimed; or if it is to be inferred that the plaintiff in error had complied with the requisitions of the statute, by noticing the cause for argument, and serving the necessary papers, and that the relator attended the argument in consequence thereof, as he would in that case be required to do, then the justice has certified to compensation for some services which were not required by the relator, and which it was not his duty to perform. It is said all questions are settled by the certificate. That might be so, if the certificate had been confined to the compensation for attending to the argument of the case, and perhaps preparing brief and points; but the judge certifies as to some services not required, and although they may have formed, and probably did, but a small part of the compensation to which he was of opinion the relator was entitled, the court cannot say from the writ how much he did allow for these services. Like the case of a salary officer, he could not claim compensation, *extra* his salary, or *extra* for services which he was not required to perform, or for a service or duty for which no compensation is provided by statute. (1 *Hill,* 362.) But admitting that the writ is sufficient, and that the relator is entitled to a return, what facts have the defendants interposed against the relief demanded? The return shows that the item has been twice presented to the board for allowance; that it was referred to Judge Wells, with the whole bill presented by the relator for taxation. The judge taxed the bill, except as to this item, which he declined to tax. The defendants, in 1849, allowed $15 for the services claimed, alledging that sum was a reasonable compensation therefor, and refused to allow any more; in 1850 the item was again presented, and referred to the same judge, who declined to tax it, and the board refused to allow the balance claimed, of $30. If the relator was entitled to any compensation, the defendants have passed upon that question, and have awarded him a sum which they, in the exercise of their discretion, considered

sufficient for the services rendered. I do not think they were controlled by the certificate of the justice of the supreme court; but I incline to the opinion that they had a discretion as to the amount which they would allow, notwithstanding the act of 1848 provides that a reasonable compensation, to be certified by one of the justices of the supreme court, shall be audited and allowed by the board of supervisors, and paid out of the treasury of the county. If they had such discretion, a mandamus will not lie. It is only where the board has refused to act altogether, that the writ is sent. Its office is to put them in motion. But if they have acted on the subject matter, the court will not undertake to control them in the exercise of their discretion, as to the amount at which an account presented shall be audited. (1 *Hill*, 362. 12 *John*. 414.)

But if the board had no discretion in the matter, and were required to audit and allow the whole amount as certified by the justice, ought a peremptory mandamus to be awarded? It has been repeatedly decided that a writ of mandamus will only go when no other legal remedy exists; but when a party is entitled to relief, or can enforce his claim by action at law, he must pursue that remedy, and cannot ask the aid of the court by mandamus. (12 *John*. 414. 25 *Wend*. 680. 6 *Hill*, 243. 2 *Id*. 45, *and numerous other cases*.) The relator contends in this case, that he was required to perform the services claimed, and that the certificate of the justice was *conclusive*, as to the amount which he was entitled to be allowed. Be it so. The board have refused to allow it, and what is his remedy? I think it is by action. The first section, 1st R. S. 384, enacts that, whenever any controversy or cause of action shall exist between any of the counties of this state, or between any such county and an individual or individuals, such proceedings shall be had, either at law or in equity, for the purpose of trying and finally settling such controversy, and the same shall be conducted in like manner, and the judgment or decree thereon shall have the like effect, as in other suits or proceedings of a similar kind between individuals and corporations. Section 2d provides that all such suits and proceedings shall be brought by or against the board

of supervisors of the county. If the board has neglected or refused to perform a legal duty enjoined upon them, and which they are bound to discharge, an action will lie against them. In *Ex parte Lynch*, (2 *Hill*, 45,) it was held that a mandamus would not lie to compel the supervisors of the city and county of New-York to audit and allow the salary of an associate judge, the remedy being by action at law. So in *The People* v. *Lawrence*, (6 *Hill*, 243, 4,) it was decided that if the allowance by the board had been authorized, and payment improperly withheld, the remedy was not by mandamus, but by action. And when a new court was created, and the common council were directed to pay salaries, which they refused to do, a mandamus was refused, because an action could be maintained to recover the amount of the salary. (*People* v. *Mayor of New-York*, 25 *Wend.* 680.) These are analogous cases to the one under consideration, and I think decisive of the question. The relator has a clear remedy by action, and therefore the application for a peremptory mandamus must be denied, and judgment be rendered for the defendants on the demurrer to the return, with costs to be paid by the relator.

[FRANKLIN GENERAL TERM, July 5, 1852. *Willard, Hand, Cady* and *C. L. Allen*, Justices.]

---

## FULLER *vs.* FULLERTON and others.

An action upon the official bond of a town superintendent of common schools must be brought in the name of the supervisor, to whom the same was given, or to his successor in office. It cannot be brought in the name of a subsequent town superintendent of schools.

THIS was an action commenced by the plaintiff as superintendent of common schools in the town of Athol, before a justice of the peace of Warren county. The complaint averred that at the annual town meeting in the the town of Athol, in said

county, in April, 1847, Edward Fullerton, one of the defendants, was duly elected superintendent of common schools of said town of Athol, and that afterwards, on the 12th of April, 1847, for the purpose of enabling him to enter upon the duties of his office, he as superintendent, and the other defendants as sureties, executed a bond or writing obligatory, (then) on file in the town clerk's office of Athol, to the supervisor of said town of Athol, David M. Cameron, conditioned for the faithful application and legal disbursement of all the school moneys coming into his (Fullerton's) hands as such town superintendent during his term of office. The complaint further alledged, that Fullerton, as such town superintendent, received into his hands a large sum of money, which he had neglected and refused to apply and disburse, and that the plaintiff, as his successor in office, was the legal owner of the bond, and brought this action on said bond in his own name, and demanded of the defendant the sum of $100, being the amount of money not disbursed or paid over by Fullerton. The defendants in their answer objected, in the first place, that the action was not maintainable in the name of the superintendent, and that it should have been brought in the name of the supervisor, to whom the bond was given, or to his successor in office, the then supervisor of the town. This was overruled by the justice, and the defendants answered, setting up the statute of limitations, and denying each and every allegation in the complaint, and averring that they were not liable for any moneys in the hands of Fullerton after the expiration of one year from the time of his election, or the date of the bond, and also that they gave notice to the supervisor and collector of the town not to pay over any money to Fullerton, before any money was paid over to him, as they would not be answerable for the faithful disbursement of any money by him. The plaintiff took issue on the answer of the statue of limitations, and denied that the other allegations in the answer were any defense to the action. On the trial of the cause it was admitted, that the money claimed was in Fullerton's hands up to the first of May, 1848. The bond was produced, and the execution thereof proved. It was proved by Fullerton himself, that he was elected superin-

tendent for one year, in April, 1847; that in March, 1848, and before the annual town meeting of that year, he received as such superintendent from the county treasurer of Warren county the sum of $299,30, that of this sum over $100 remained in his hands, which he had never disbursed or paid over, although it had been demanded of him by the plaintiff since his election to the office. Fullerton's term of office would have expired in April, 1848, but by the act of 1847 he continued to hold his office till the 1st day of November of that year. The money was in his hands until August, 1848. It appeared in evidence, on the part of the defendant, that the collector of Athol was notified by one of the bail, and that he at his request notified the supervisor and county treasurer in February, 1848, and before Fullerton received any money, not to pay any money over to him, as they, the bail, would not be responsible or answerable for its faithful application or disbursement by him. The cause was tried by a jury, who rendered a verdict for the plaintiff for $100, for which sum, with $5 costs, the justice rendered judgment against the defendants on the 6th of May, 1850. The defendants appealed to the Warren county court, and the judge of that county certified the appeal to this court.