## CHASE *vs.* THE COUNTY OF SARATOGA

In respect to charges against a county, for services for which no fixed or definite sum is prescribed as a compensation, the board of supervisors have a discretion, and may allow such sum as they deem to be just.

Boards of supervisors, in auditing and allowing that class of accounts, act *judicially*, and no proceeding can be had against them, or against the county, for an erroneous determination.

An individual cannot sustain an action against a *county* as a party, even though he has an absolute demand against the county, not subject to the discretion of the board of supervisors. The action must be brought against the board of supervisors, if any action lies.

Where one having a claim against a county presents the account to the board of supervisors, who audit the same, and allow a portion of the amount, which the claimant accepts, under protest, he cannot maintain an action against the county to recover the balance of the account which was not allowed.

Even in cases where no discretion is vested in a board of supervisors, in respect to an account presented to them, and a clear legal duty rests upon them to cause the whole amount to be levied, collected and paid as a county charge, which they refuse to perform, an *action* will not lie, against the board of supervisors. The only remedy of the creditor is by application to the court for a *mandamus* to compel them to perform that duty.

THIS was an appeal from the county court of Saratoga. The facts sufficiently appear in the opinion.

*S. Chase,* plaintiff, in person.

*Charles S. Lester,* for the defendants.

*By the Court,* POTTER, J. The questions that arise in the discussion of this case require the examination, to a certain extent, of the powers and duties of the boards of supervisors of the several counties, who, as organized local forums, are called upon to perform various duties, largely affecting public and private interests, and are clothed by statute with powers, legislative, judicial, and ministerial. The amount of claim, involved in this case, is quite inconsiderable, but the proper settlement of the legal questions involves very important public and private interests. The clerk of the

board of supervisors of Saratoga county, under the authority of the act of 1847, ch. 445, § 24, had employed the plaintiff as publisher of a public newspaper, called "The Ballston Atlas," to publish the abstracts of town accounts. The plaintiff performed this duty. The advertisement contained 120 folios. The plaintiff then presented the account to the board of supervisors of said county, duly verified as required by law, charging $60, as a compensation for said service. This would be the true amount at the maximum rate provided in the fee bill. The board of supervisors audited and allowed to the plaintiff $30 only, for such service. The plaintiff accepted this sum, under protest, and brought this action in a justice's court, to recover the balance of said bill, to wit, the $30 which was not allowed. The action was brought against "The County of Saratoga," as defendants, and the summons was served on the chairman of the board of supervisors. The plaintiff recovered a judgment before the justice, for the balance of his bill, $30, and costs, from which judgment the defendant appealed to the county court. The county court affirmed the judgment of the justice, and from the judgment of the county court the defendant appealed to this court.

There are several reasons why this judgment cannot stand; either one of which would be sufficient to reverse the judgment, but as these reasons have been severally examined, we will present them in their order.

*First.* It will be observed, that the statute which provides compensation to printers and publishers of newspapers for services similar to those which the plaintiff performed in this case, does not, as was supposed, fix any precise amount to be paid therefor. It fixes a limit, beyond which, compensation shall not be allowed. (*See* 3 *R. S.* 929, § 45, *5th ed.*) The allowance is, "*not more* than fifty cents per folio for the first insertion, and twenty cents per folio for each subsequent insertion," &c. This language is similar to that of the section of the statute providing compensation to jurors for

services in courts of record, which authorizes boards of supervisors to direct a sum, "*not exceeding* one dollar per day," to be allowed to every grand and petit juror, and *not exceeding three cents per mile*, to and from court. (*Id.* 929, § 29.) The allowance of *any* fees, under the chapter in which these provisions are contained, is declared not to apply to any case where special provision is made by law for any particular service; but the fees for such service shall be such as are provided in the statute requiring the service, or providing the compensation therefor. (*Id.* 930, § 2.) The provision in the statute prescribing the compensation to the state printer, for publishing proceedings, &c. in that paper, is expressed in very different language. That provision is found in 1 *R. S.* 492, § 5, *5th ed.* This is the language: "the state paper *shall be allowed to charge and collect*, for the first insertion, thirty cents per folio, &c. and for each subsequent insertion twenty cents," &c. The distinction is palpable. The latter prescribes the *exact* sum; the former does not, but only a limit, beyond which the board of supervisors shall not go. All charges against a county, when the *specific* compensation is not provided by law, and all contingent expenses necessarily incurred for the use and benefit of a county, (which would include the plaintiff's demand,) are required to be presented to the board of supervisors of the county, to be audited by such board. (1 *R. S. 5th ed.* 902, 903, §§ 1, 2, *and subdivisions.*) By the same statute, (*Id.* 855, § 37,) the account is required to be made out in items, duly verified, stating the account to be correct—that the services have in fact been made—and that no part thereof has been paid; and by the 38th section of the same statute, the making of such affidavit shall not be construed to prevent such board from disallowing such account, in whole, or in part, nor from requiring further evidence of its truth and propriety. These provisions, taken together, show, clearly, that in reference at least to charges for services for which no fixed or definite sum is prescribed as a compensation, the board of

LAW SCHOOL LIBRARY

supervisors have a discretion, and may allow such sum as they may deem to be just. Boards of supervisors, in auditing and allowing this class of accounts, act *judicially,* and no proceeding can be had against them, or against the county, for an erroneous determination in relation to their acts.

*Second.* The plaintiff could not sustain this action against the " county," as a party, even if he had an absolute demand against the county, not subject to the discretion of the board of supervisors. By 1 *R. S. 5th ed.* 846, § 1, each county, as a body corporate, has capacity to sue and be sued, but only in the manner prescribed by law. (*See also* 20 *Barb.* 294; 2 *Kernan,* 52; 23 *Barb.* 338.) By § 2 of the same statute, " No county shall possess or exercise any corporate powers, except such as are enumerated in this chapter, (ch. 12,) or shall be specially given by law, or shall be necessary to the exercise of the powers so enumerated or given." Among the enumerated powers is not to be found that of bringing or defending actions relating to demands due to or from the county, with individuals; but on the contrary, as a complete prohibition and negative to the exercise of such power, section 3 of the same statute declares, " All acts and proceedings by or against a county shall be in the name of the board of supervisors of such county," &c.; and by section 4 of the same statute, " The powers of a county, as a body politic, *can only be exercised* by the board of supervisors thereof, or in pursuance of a resolution by them adopted." (*See also* 5 *Denio,* 517; 26 *Wend.* 70.) There is still another statute (3 *R. S. 5th ed.* 774, § 108) by which it is again provided as follows: " Actions against counties, in the cases in which they are allowed by law, *shall be brought against the board of supervisors thereof,*" &c. (*See also* 2 *Kernan,* 52; 2 *Sandf. S. C. Rep.* 470.) The plaintiff's action is brought directly against the " county" by its corporate name. Clearly, his action is improperly brought. The authorities above cited establish the law to be, that the corporate powers of a county are not only limited in extent, but are confined and restricted

as to the *manner* in which they may be exercised. There is. no grant of corporate power to be used or exercised by, or in behalf of a county, in relation to the claim against them, which is a county charge, and which it is the duty of the board of supervisors to examine, settle and allow, otherwise than by and through the medium of the board of supervisors.

*Third.* Another reason why the plaintiff ought not to recover this demand is, that he selected a forum not only duly authorized by law to " audit, settle and allow" his account, but a forum which, having jurisdiction of the subject matter thereof, did *adjudicate* and pass thereon, and gave him the result of their judgment, which he accepted. If it was a case where the board of supervisors had no discretion to *disallow;* as, where the compensation was a fixed, vested, legal right, and where they could not, therefore, act *judicially*, or with discretion, his remedy was by mandamus to compel them to give him his fixed legal rights. Not only by a well established rule of law can he *not* split one entire demand, all due, and prosecute in one court, or body having jurisdiction of the matter, and recover a part, and then bring another action in another court to recover the balance ; but the errors of the one body should not and cannot thus be corrected by the other ; to say nothing of the legal estoppel to him, of having accepted (or having taken) the amount of the first adjudication, or of the effect of a former proceeding, in bar of his recovery in the latter.

*Fourth.* The plaintiff could not bring *an action at law* upon such a demand, had the supervisors refused to allow him any thing thereon. His only remedy was by *mandamus.* The recent cases upon this point are all in harmony. Since the case of *Brady* v. *The Supervisors of New York*, reported in 2 *Sand. S. C. Rep.* 459, reviewed and affirmed in the court of appeals, (6 *Seld.* 260,) this point may be regarded as settled. The principles involved in this case are decided in that. At all events, I am not able to distinguish them. In a still later case, *Boyce* v. *The Board of Supervisors of Cayuga Co.*,

(20 *Barb.* 294,) the supreme court lay down the law in broad terms to be, " that even in cases where no discretion is vested in a board of supervisors in relation to an account presented to them, and a clear legal duty rests upon them to cause the whole amount to be levied, collected and paid as a county charge, which they refuse to perform, an *action* will not lie against the board of supervisors. That the *only remedy* of the creditor is, by application to the court for a mandamus to compel them to perform that duty." The only difference between that case and this that we are considering is, that in the former it was conceded that the board had no discretion, and that the action was brought against the board of supervisors, and not against the county directly. That was not only a stronger case for an action, but if an action could have been maintained at all, it was unlike this, in being against the proper party. The dictum in *People* v. *Supervisors of Fulton Co.*, (14 *Barb.* 58,) that an action can be maintained, is not law, and was not necessary to the decision of that case. The reasons of the court for their decision in *Brady* v. *The Supervisors of New York*, (*supra,*) are not given in 6 Selden, where it is reported. The court say they decide it upon the reasons given in the court below, by Oakley, Ch. J. The substance of those reasons I shall adopt. That is, that the statutes which confer the power on the board of supervisors of the several counties, " to examine, settle and allow," all accounts chargeable to the county, is not merely *directory,* giving the claimant or creditor the *option* to present or not, his claim, but was intended to create this local forum, as an independent " quasi corporate" body of men, having no direct interest against the claimants, elected by the people, and constituted by law, for most purposes, a judicial body ; with power conferred to decide all matters of account between individuals, and the whole body of the people of the county whom they represent. The court, in the last cited case, say, " If such a claim, [by an action at law,] can be maintained, it would necessarily lead to interminable suits against the

Chase *v.* The County of Saratoga.

counties, for every description of accounts and demands." " We think it was clearly the intention of the legislature to protect the counties from such suits." Not only because of its authority, but for its good sense, we heartily concur in this view. If this were not the intent of the statute, it may be said that " boards of supervisors" would be worse than a useless institution, for the main object for which they were created. That portion of the public creditors of the county who might perhaps fear their examination would be too scrutinizing, would probably resort to the courts, and vice versa. Thus having two co-ordinate bodies, possessing different powers, with different rules of evidence, and different proceedings, in one, the power of adding to the demand against the county the *costs* of litigation, the other, not; thus opening a door to interminable litigation. Unless it was the intent of the legislature that all such accounts should be passed upon by the board of supervisors, the most important provision connected with their power " to examine, audit and settle," to wit, " *to direct the raising such sum as may be necessary to defray the same,*" would be useless, because it could never be exercised. The board could never know, while all the accounts were being litigated in the courts, what sum to raise. For these reasons it is clear that it is our duty to order the judgments of the county court and of the justice to be reversed.

Judgment reversed.

[CLINTON GENERAL TERM, May 7, 1861. *Rosekrans, Potter* and *Bockes,* Justices.]