NEW YORK PRACTICE REPORTS. 173

People, *ex rel.* Sherman agt. The Supervisors of St. Lawrence Co.

## SUPREME COURT.

THE PEOPLE, *ex rel.* BENJAMIN F. SHERMAN agt. THE BOARD OF SUPERVISORS OF ST. LAWRENCE COUNTY.

Where a *board of supervisors* accept and act upon an account containing various items, presented to them for audit and allowance, they are estopped from objecting subsequently, that the *account* only is *verified*, and not the *items* of the account, as required by the statute.

The duty of a board of supervisors in auditing and allowing accounts, is *First*: To examine and determine whether an account is properly verified: If so, *Second*: To see if it is properly chargeable against the county: If so, *Third*: To settle or fix its amount: *Fourth*: Allow it as thus settled; and *Fifth*: To provide means for its payment.

If an account is not properly *verified*, it should be returned to its claimant with notice, that he may appear and correct it. If it is not properly chargeable against the county, it should be rejected. In settling the amount, if it is for any matter the price of which is *fixed by law, by custom, by authority*, or *by contract*, with one having authority to contract on behalf of the county, the board have *no discretion*. It must settle or declare the amount in each case according to such law, custom, authority or contract.

But if the amount is for any matter which does not come within either of said classes, the board in settling or fixing amounts is vested with a *discretion*, and acts in the light of such information as it may possess or seek, or as may be furnished to it by claimants. In such cases, when the board has once acted and exercised its discretion, a *mandamus* will not lie to compel further action.

But in all cases where the exercise of discretion is required, and the board is not satisfied with the sum charged, it is better, it is just, that notice be sent to the claimant, with a request to appear and explain, before making a blind and arbitrary reduction of the account, without evidence or knowledge to support their decision.

*St. Lawrence Special Term, January*, 1865.

APPLICATION by the relator for a peremptory mandamus, upon the following affidavits :

State of New York, county of St. Lawrence, ss: Benjamin F. Sherman being duly sworn says, that he is a practicing physician, surgeon and chemist, and resides at Ogdensburgh, St. Lawrence county, New York. That in the month of October, 1864, Bennett H. Vary, Esq., the district attorney of St. Lawrence county, employed this deponent as a chemist to make a chemical examination and

analysis of certain bread and butter, the contents of a certain tin pail then delivered to this deponent, pursuant to the direction of the said district attorney. Deponent further says, that he was then and there informed by the said district attorney, that it was very important to have the analysis carefully made, as a criminal charge of poisoning against Mrs. Susan Denny and Peter Labeau, was involved in the case. Deponent further says, that pursuant to such employment, after procuring the necessary materials therefor, he did make a careful chemical examination and analysis of the contents of said certain tin pail, and subjected the said contents to several of the various scientific tests known for the discovery of poison, and discovered that strychnia was mixed with the bread and butter in said pail in large quantities. Deponent further says, that one hundred and twenty-five dollars is a very moderate and reasonable charge for the labor and skill requisite, and necessarily used and employed by this deponent in making such chemical analysis; that deponent charged that sum therefor, and that the said Bennett H. Vary, Esq., as such district attorney, certified to the correctness and justness of said charge, a copy of which bill, and of the district attorney's certificate indorsed thereon, is hereinafter set forth and made part of this affidavit. Deponent further says, that in the month of October, 1864, Dr. John A. Furniss, one of the coroners of St. Lawrence county, and B. H. Vary, Esq., district attorney of St. Lawrence county, duly employed this deponent to make a post-mortem examination of the body of one William Mullett; that it was currently reported at the time that said William Mullett had come to his death through violence, and that in order to make a sufficiently careful surgical examination to enable this deponent to form a correct professional opinion, it became necessary to dissect the head of the said William Mullett; that the body had been in the water for a number of weeks, and was in a state of advanced decomposition; that depo-

nent charged only ten dollars therefor, although in his opinion it was justly worth a much larger sum; that deponent presented both of said bills properly verified, to the board of supervisors of St. Lawrence county, at the last annual session, in November, 1864, and that the said board of supervisors refused to audit said bills at the sum of one hundred and thirty-five dollars, the full sum charged, but did audit them arbitrarily at the sum of eighty dollars, and granted deponent an order therefor, which deponent has refused to accept, knowing that he is honestly entitled to receive the full sum charged, and believing that he is legally entitled to have his said bills audited at the sum of one hundred and thirty-five dollars, the amount charged by deponent. Deponent further says, that his said bills presented to the said board of supervisors, and hereinbefore referred to, together with the district attorney's certificate indorsed thereon, were in the words and figures following to wit:

St. Lawrence County,

To B. F. Sherman, Dr.

1864, October. To chemical analysis for the detection of poison of the remains of Julius Denny's dinner, or the contents of his dinner pail, by order of B. H. Vary, Esq., district attorney _____ $125 00

1864, October 23. To post-mortem examination and dissection of the body of a man who had been four weeks in the water, by order of the coroner and district attorney _____ 10 00

$135 00

St. Lawrence county, ss: B. F. Sherman being duly sworn, says the above account is correct, the services

therein mentioned were rendered, and the charges are just and reasonable, and no part thereof has been paid.

                                                    B. F. SHERMAN.

Sworn before me this 12th day of November, 1864, A. B. JAMES, Just. Sup. Court.

{ U. S. R. S.
  5 cents,
  cancelled. }

I certify that I directed Doctor B. F. Sherman to make a chemical analysis of the food found in the possession of Julius Denny, claimed to have been poisoned. That such examination was absolutely necessary for the prosecution of Mrs. Susan Denny and Julius Labeau. That in my judgment his charge therefor is reasonable. November 12th, 1864.                B. H. VARY, Dist. Attorney.

                                                    B. F. SHERMAN.

Sworn before me this 27th day of December, 1864, J. C. BARTER, Justice of the Peace.

{ U. S. R. S.
  5 cents,
  cancelled. }

State of New York, county of St. Lawrence, ss : John R. Furniss being duly sworn says, that he is a practicing physician, surgeon and chemist, and resides at Ogdensburgh, St. Lawrence county, New York ; that he is one of the coroners of St. Lawrence county. Deponent further says, that he is well acquainted with the services rendered by Dr. B. F. Sherman, and charged for in the foregoing bill ; that deponent was present and saw them rendered ; that the several sums charged therefor are less than the same was actually worth, and much less than a reasonable charge therefor. Deponent further says, that the chemical analysis was a delicate, scientific operation, requiring much time and great care, in order to subject the materials to the several established scientific tests ; that the work was both carefully and thoroughly performed.

                                                    J. R. FURNISS.

Sworn before me this 27th day of December, 1864, J. C. BARTER, Justice of the Peace.

{ U. S. R. S.  
   5 cents,  
  cancelled. }

State of New York, St. Lawrence county, ss: Bennett H. Vary being duly sworn says, that he is the district attorney in and for St. Lawrence county, and has been for the three years last past; that as such district attorney, his attention was called officially in October last, to an alleged case of poisoning of one Julius Denny; that upon examining into the matter, deponent ascertained that, as was alleged, poison had been feloniously mixed with the food of the said Julius Denny, by mingling or mixing it with certain food prepared for his dinner; that in order to ascertain the kind of poison, etc., it became necessary to employ a chemist to make a chemical analysis of so much of the said poisonous food as came into the custody and control of this deponent as the district attorney of St. Lawrence county; that deponent employed Dr. Benjamin F. Sherman, of Ogdensburgh, to make the chemical analysis, and that it was made carefully and to the entire satisfaction of this deponent, and that it was scientifically established by said chemical analysis that strychnia had been mixed with said Julius Denny's food; that the sum of $125, charged by Dr. B. F. Sherman for such chemical analysis, is, in the opinion of this deponent, just and reasonable, and no more than he should be allowed for the professional skill and labor requisite to faithfully perform the employment. Deponent further says, that Mrs. Susan Denny and Peter Labeau, have since been indicted by a grand jury of the county, on the charge of having mixed said poison with the food of Julius Denny, with felonious intent of murdering him. Deponent further says, that in the opinion of deponent, if the board of supervisors adhere to their action in this case, it will be attended with great embarrassment to this deponent in the administration of

criminal justice in this county. Deponent further says, that conviction could not be had without such chemical analysis.                                        B. H. VARY.

Sworn to before me this 27th day of December, 1864, J. C. BARTER, Justice of the Peace.

{ U. S. R. S.
   5 cents,
   cancelled. }

Read on application, A. B. JAMES, Justice.

CHARLES G. MYERS *and* D. MAGONE, JR., *for relator.*
S. FOOTE *and* H. L. KNOWLES, *for defendants.*

JAMES, J. On the application of the relator, an order was issued to the board of supervisors of St. Lawrence county, requiring them on a day and place specified, to show cause why a peremptory mandamus should not issue to compel said board to allow an account at its full amount, presented against the county by the relator.

At the time and place designated, the board by its counsel, appeared, and moved to dismiss the order. 1st. Because the affidavit attached to the account was insufficient; and 2d. Because the order asks for a writ directing the allowance of a specific sum, and the amount to be allowed was in the discretion of the board. The questions arising on this motion being reserved for further consideration, the facts were agreed upon, and the whole case submitted for adjudication.

The following are copies of the account, verification and certificate, presented by the relator to the board at its regular annual meeting in 1864:

ST. LAWRENCE COUNTY,

To B. F. SHERMAN, Dr.

1864, October. To chemical analysis for the detection of poison of the remains of Julius Denny's dinner, by order of the district attorney_____ $125 00

October 23. To post-mortem examination of the body of a man four weeks in the water, by order of coroner and district attorney_____ $10 00

$135 00

St. Lawrence county, ss : B. F. Sherman being duly sworn, says, the above account is correct, the services therein mentioned were rendered, and the charges are just and reasonable, and no part thereof has been paid.

Signed and sworn.

I certify that I directed Dr. B. F. Sherman to make a chemical analysis of the food found in the possession of Julius Denny, claimed to have been poisoned; that such examination was absolutely necessary for the prosecution of Mrs. Susan Denny and Julius Labeau; that in my judgment his charge therefor is reasonable.

B. H. VARY, Dist. Attorney.

This account, with others, was by the clerk of said board classified with miscellaneous accounts, and by a standing rule of the board referred to such committee. Afterwards, said committee made a report to said board, wherein said accounts were in part allowed, in part disallowed, and a portion allowed in part and disallowed in part. From the account in question, $55 was deducted and $80 allowed. But no reason was given by the committee for such deduction. Said report was read to the board in detail: was amended by allowing an account rejected, and then as amended, adopted by said board.

Among the powers delegated to boards of supervisors at their annual meetings, is that of auditing accounts against the county, and providing means for payment. The statute states their duty and powers thus : " To examine, settle and allow, all accounts chargeable against such county, and to direct the raising such sums of money as may be necessary to defray the same " (1 *Rev. Stat. 5th ed.* 548,

§ 2, *sub.* 2). The statute also says : " No account shall be audited unless made out in items, and be accompanied by an affidavit of the person presenting or claiming the same, that the items of such account are correct ; that the disbursements or services charged have been made or rendered, and that no part has been paid or satisfied " (*Id.* 855, § 37). " But this requirement is not to prevent any board from disallowing any account in whole or in part, even when so rendered or verified, or from requiring any other or further evidence, as the board may think proper " (*Id.* 855, § 38). It will be observed that the account in question contained two items ; that the statute requires the items of an account to be verified, and that the verification in this case was of the account, and not of the items. The verification was not, therefore, strictly in accordance with the statutory requirement, although under the facts of this case, it might, perhaps, be deemed a substantial compliance ; but whether so or not, was immaterial to this application, because the board accepted and acted upon the account, allowing it in part, without any objection to the form of the verification. Therefore this proceeding should not be dismissed for this reason.

The services charged for in the account rendered, were properly chargeable against the county. They were ordered by an officer of the county, within the sphere of his duty and scope of his authority ; they were necessary to the proper administration of criminal justice in the one case, and to a proper inquiry of the crime in the other, and the board by its action acknowledged the liability of the county, and the right of the relator to compensation. The only question between the parties is, what should be the amount of that compensation. The relator claims and insists, that he should be allowed his whole charges ; that the account being verified, the board upon its own mere " *ipse dixit*," had not the right to reduce the amount charged ; that if it can be done at all after the verification,

it must be upon some proof that the charge is too much. It will be seen by reference to the 38th section of the Revised Statutes, above cited, that the act of verification in no way trammels the action of the board in auditing accounts. They are to examine, settle and allow, all accounts chargeable against the county. This seems necessarily to imply the exercise of judgment and discretion in settling and allowing, and to involve the right to reject, if sufficient reasons for allowing are not, in their opinion, presented (9 *Wend.* 509). The duty of the board of supervisors, seems to be this : They are first to examine and determine whether an account is properly verified. If so, then, Second. To see if it is properly chargeable against the county. If so, then, Third. Settle or fix its amount. Fourth. Allow it as thus settled ; and, Fifth. Provide means for its payment. If an account is not properly verified, it should be returned to its claimant, with notice, that he may appear and correct it. If it is not properly chargeable against the county, it should be rejected. In settling the amount, if it is for any matter the price of which is fixed by law, by custom, by authority, or by contract, with one having authority to contract on behalf of the county, the board have no discretion. It must settle or declare the amount according to such law, custom, authority or contract; but if the amount is for any matter which does not come within either of said classes, the board in settling or fixing amounts is vested with a discretion, and acts in the light of such information as it may possess or seek, or as may be furnished to it by claimants. In such cases, when the board has acted, when it has once exercised its discretion, a mandamus will not lie to compel further action (1 *Hill*, 367). The office of a mandamus is to compel the tribunal or persons to whom directed, to act, or to do some particular thing therein specified, which pertains to their office or duty, and which the court issuing it has previously determined (12 *J. R.* 415). As a board

of audit of claims against the county, supervisors are invested with a very delicate and important duty in cases where the amount is not fixed by law or authority, or has not been predetermined by agreement. In such cases the general harmony and interests of the county demand sound judgment and caution in the exercise of that discretion; that while the interests of the county are properly protected on the one hand, injustice is not done to its citizens on the other.

It is often alleged that boards of supervisors have no fixed system or rule in settling unliquidated accounts presented for their action; that they act arbitrarily; often making deductions without sufficient investigation or inquiry, until a system has grown up of charging the county more than individuals, in order to meet the contingency of arbitrary deduction by the board. Such a practice is wrong, and while an arbitrary deduction from such accounts would be just, it would be unjust to such as presented claims at a fair price. Therefore it would be better, if the board would, in every instance, inform itself of the real merits of the claim, in order to determine understandingly the true sum at which it should be settled. To that end, the board or its committee, are invested with authority to call before them witnesses (1 *Rev. Stat. 5th ed.* 855, § 38), and with power to compel their attendance (*Id.* 852, § 20), and examine them as to facts or as experts. In *The People* agt. *Supervisors of Fulton* (14 *Barb.* 52), the account was for services as district attorney. No one of the board being lawyers, they called before them the county judge, and took his opinion, which they followed. In that case, too, they gave the claimant notice, that he might appear and explain, which he did. All this was quite proper, and showed an anxiety on the part of the board to act understandingly. In some instances members of the board have a practical knowledge of the subject matter of the account. In such cases they may be examined as experts, either

with or without oath, as a guide in determining the amount at which such account should be settled. But in all cases when the board is not satisfied with the sum charged, it is better, it is just, that notice be sent to the claimant, with a request to appear and explain. In this case it is pretty certain that neither the committee, nor any member of the board, had any practical knowledge of the value of the services charged. A deduction was made from the account, but the committee in their report gave no reason for their action; no witnesses or experts were examined to inform them of the value of the charge; the claimant was not notified that his charges were deemed too high, with a request to come forward, if he desired, and explain. The inference therefore is, that the $55 was deducted because the board thought the sum was too much, an arbitrary act, without evidence or knowledge to support it. Such disposition of an account can never be satisfactory either to the board or the claimant. Suppose the claimant had been called, and had proved to the committee that he reluctantly undertook the service charged for, because of his liability to be called away from his home and patients, in case poison was detected, to attend court, and at his own expense; that he finally consented to make the test at the earnest solicitation of the district attorney, and his representation that the ends of justice demanded it; that before presenting his account he had already twice attended court as a witness, at an expense of $20 and four days time, and was under recognizance to appear again; and this in addition to the cost of chemicals, and labor and science necessary to perform the service, would any member of the board of supervisors deem the charge too high? I think not.

But all this is not material to the case as before me, further than to illustrate the importance of giving to each claimant whose charges are deemed too large, an opportunity of being heard in explanation thereof. This account having been by the board referred to a committee, that

committee having acted upon it, and reported their action to the board, and that report having been amended and adopted, the result in its legal sense is the determination of the board. By that act the amount of the account was settled at $80. The sum for the service not being fixed by law, authority or custom, nor predetermined by agreement, was in the discretion of the board, and that discretion having been exercised, cannot be reviewed.

Order for a peremptory mandamus denied, with $10 costs.