### PEOPLE *ex rel.* BLISS *v.* BOARD OF SUPERVISORS OF CORTLAND COUNTY.

*(Supreme Court, Special Term, Cortland County. April, 1891.)*

1. DISTRICT ATTORNEYS—POWER TO HIRE EXPERTS.

    A district attorney, in hiring an expert physician to assist in a murder trial, may, where necessary, stipulate to pay a specific compensation.

**2.** CLAIMS AGAINST COUNTY—AUDITING—MANDAMUS.

Where a claim has been presented to a board of supervisors, and it has been only informally examined without the swearing of witnesses, or the giving of an opportunity to claimant to produce witnesses, or present his legal rights by counsel, *mandamus* will lie to the board to audit the claim, on the ground that they have not judicially investigated the claim.

**3.** SAME—ESTOPPEL.

Where one, after obtaining an alternative writ of *mandamus* to a county board to audit his claim, accepts the order of the board for the sum at which it had previously assumed to audit the claim, and draws the money thereon, he is estopped from making any further demand on the claim, though at the time of accepting it he stated that he did it without prejudice to his rights in the *mandamus* proceedings, and the supervisor who delivered the order assented to the condition.

William Y. Bliss applied for a writ of *mandamus* to the board of supervisors of Cortland county to audit and allow his bill of $150 for six days' services as an expert physician and witness in a murder trial, rendered, as he alleged, on an agreement with the district attorney that he should receive $25 per day therefor. An alternative writ was allowed. His bill had been presented to the board, and by it referred to a committee, which, after an informal proceeding, had reported that the district attorney had not made, and could not make, an agreement to pay any fixed amount, and recommended the payment of $60 as a reasonable fee. The report of the committee was adopted by the board, without any evidence being presented to them.

*Lawrence T. Jones,* for relator. *Franklin Pierce* and *O. U. Kellogg,* for defendants.

SMITH, J. By 1 Rev. St. (Birdseye Ed.) p. 732, it is provided: "The following shall be deemed county charges: * * * *Second.* The fees of the district attorney and all expenses necessarily incurred by him in criminal cases arising within the county. * * * *Ninth.* The moneys necessarily expended by any county officer in executing the duties of his office, in cases where no specific compensation for such services is provided by law." Under these statutes, the district attorney had power to employ the relator to assist in consulting upon the trial of this case; and such has been found to have been the contract made at the time of the trial. *People* v. *Supervisors,* 30 How. Pr. 173; *People* v. *Montgomery,* 13 Abb. Pr. (N. S.) 207; *People* v. *Supervisors,* 58 Barb. 139–146. While the defendant concedes the power of the district attorney to employ experts, it denies the right to stipulate by contract for a specific compensation. In the case of *People* v. *Supervisors,* 58 Barb. 146, it was held that the district attorney had this right. The right is also recognized in *People* v. *Supervisors,* 30 How. Pr. 181, and in *People* v. *Supervisors,* 32 N. Y. 473. Such a contract may be a necessary one in the execution of his duties. Prominent experts, whose services it is important to obtain, may refuse to act, and rely upon what they deem the caprice of the board of supervisors for their compensation. In such case the district attorney clearly has the right to make a contract for a specific sum. The test of the right to make such a contract is its necessity. That necessity is to be judged from all the circumstances surrounding the case, and one of the elements is its reasonableness. A contract providing for exorbitant compensation would seldom be a necessary one. The district attorney—the law officer of the county—is the one best qualified to judge of its necessity, and his determination of such necessity should largely control the board, unless he should appear to have made a palpable mistake. While the board, in such case, is the primary court for the determination of the necessity of a contract made by a public officer, whether stipulating for a specific compensation or not, its conclusion is not final. Its determination is subject to the review of the court itself, under its writ of *certiorari.* The court, upon such review, is the final arbiter of such necessity. In 1 Rev. St. (Birdseye Ed.) p. 732, by section 17, it is provided: "Accounts for county charges of every description shall be presented to the

board of supervisors of the county, to be audited by them." The board of supervisors is therefore made the court of original jurisdiction to determine the validity of this claim, and in making such determination it acts judicially. *Brown* v. *Green*, 46 How. Pr. 306; *People* v. *Stocking*, 50 Barb. 573; *People* v. *Barnes*, 114 N. Y. 317, 20 N. E. Rep. 609, and 21 N. E. Rep. 739; *People* v. *Supervisors*, 21 How. Pr. 322–328. Its conclusion, if it has properly proceeded, can only be reviewed by a writ of *certiorari*. *People* v. *Supervisors*, 51 N. Y. 442; *People* v. *St. Lawrence Co.*, 25 Hun, 131–135; *People* v. *Barnes*, 114 N. Y. 317, 20 N. E. Rep. 609, and 21 N. E. Rep. 739; *Hyatt* v. *Bates*, 35 Barb. 308, same case on appeal, 40 N. Y. 164. The court may by *mandamus* direct the defendant to properly proceed to audit a claim, but it cannot by *mandamus* direct the board to allow a claim upon which it must pass judicially. *People* v. *Chapin*, 104 N. Y. 96, 10 N. E. Rep. 141. No case has been cited where a *mandamus* has been granted where the facts upon which the legal right depended have been questioned. In the cases cited the courts have simply declared the law upon conceded facts.

In auditing this claim, therefore, the board of supervisors was required to determine two questions: *First.* Was there a contract made between the district attorney and the relator? *Second.* Was such a contract a necessary one in the execution of his duties? If it be held either that there was no contract for a specific amount, or that such a contract was not a necessary one in the execution of his duties, then the board must determine a third question,—as to what was the reasonable value of the services of the relator. Has the defendant, then, properly audited this claim and determined these questions? It appears that the claim was duly presented; that it was referred to a committee on miscellaneous accounts; that that committee informally took the statement of Mr. Bronson, the district attorney, not under oath, and made investigation of the legal rights of the relator, and heard the testimony of Dr. Hunt, not under oath; that this relator was given no notice whatever of any hearing upon the claim, though he was present at one time on his own motion, and made a statement. He was not given any opportunity to produce witnesses, nor was he given opportunity to cross-examine those produced against him; nor opportunity to present, by counsel, his legal rights to the committee. Is it possible that this can constitute what in law is meant by a judicial investigation? I apprehend there can be but one answer to such a question. The statute has created this board of supervisors as a court to adjudicate upon the rights of this relator in his claim against the county. This court is his only recourse for payment. From its judicial determination he has no appeal, save a right to have the same set aside or modified if it be against the weight of evidence. A judicial investigation means something more than an informal inquiry. In such investigation a party has the right to notice of a hearing by the judicial body upon his claim. He has the right to appear before the body and call witnesses, and demand that they be examined under oath. He has the right to cross-examine adverse witnesses who shall be put under oath. More than that, he has the right, personally or by counsel, to present to the judicial body his views of his legal rights under his claim made. An investigation without such rights does not arise to the dignity of a judicial investigation. These principles have been thoroughly established by analogous cases. An arbitration at common law was but a judicial investigation out of court. Upon an arbitration it is well settled, by a long line of decisions, that a party must have notice of a hearing before the judicial body. The witnesses must be examined under oath, unless the oath is expressly waived by the parties. Such an examination must be in the presence of the parties who have the right to cross-examine. In *Elmendorf* v. *Harris*, 23 Wend. 628, the chancellor says: "But I apprehend that, as a fundamental rule of construction, in reference to their transaction in the nature of a judicial proceeding, the contract of submission necessarily implies that the arbitrator is not author-

ized or empowered to decide the question in controversy without giving the parties an opportunity to be heard in relation thereto." *Dobson* v. *Groves*, 6 Adol. & E. (N. S.) 636; *In re Plews*, Id. 845; *Knowlton* v. *Mickles*, 29 Barb. 466; *Day* v. *Hammond*, 57 N. Y. 486, and cases cited; *Jordan* v. *Hyatt*, 3 Barb. 275, 283, 284; *Fudickar* v. *Insurance Co.*, 62 N. Y. 405, and cases cited; *Biggs* v. *Hansell*, 16 C. B. 562; *Walker* v *Frobisher*, 6 Ves. 70; *Pepper* v. *Gorham*, 4 Moore, 148; *Matson* v. *Trower*, Ryan & M. 17. If such be the rules which shall govern a proceeding in a court created by consent of the parties, *a fortiori* must they regulate a judicial investigation in a court created by law, to which a party must submit his claim or suffer its loss.

In the case of *People* v. *Board*, 30 How. Pr. 173, at special term, views are expressed which would seem to indicate that the procedure which I have deemed requisite to a judicial investigation is a mere moral obligation resting upon the judicial body, and is not a legal requirement. With these views I cannot concur. Natural justice, if not constitutional prerogative, requires that the relator's claims shall not be judicially foreclosed without due process of law. He has a property right in his contract of which he cannot be summarily divested. The board and its committee are empowered to examine witnesses under oath. The claimant whose rights are being adjudicated may demand that his claim shall be adversely determined without an opportunity to be heard, to produce witnesses, and to cross-examine witnesses produced against him, under all the solemnity with which the proceeding can be invested in the power of the court. This procedure can be waived by the party, but is essential to a judicial determination, unless there be clear evidence of waiver, which is not here found.

In this investigation the members of the board of surpervisors are not the defenders of the county. They are bound in honor to stand impartial between the relator and the county. They are made by statute the judges to determine what is justly due to the relator, and as such judges they must hold themselves unbiased from favor or prejudice. Acting as a court impartially between the claimant and the county, the county should have the right to be represented before the board, and notice of the hearing upon the claim should be given to some law officer authorized to protect the county's interest. The board should keep a record of all evidence produced before it, to the end that it may be prepared to obey the command of the court, if, by its writ of *certiorari*, the court should command its proceedings to be returned for review. It should also make a distinct finding upon the questions of fact decided, in order that the court upon such review may know what questions have been by it determined. The investigation required in order to constitute a judicial investigation may be made by a committee of the board. The committee must to its report attach the evidence taken before it. The board itself is the legal judge and auditor of the claim. It cannot proceed to its determination unless either the witnesses have been sworn before it, or the evidence which has been taken before the committee has been presented to the board, so that the vote of each individual member which enters into the determination of the board may be based thereupon. It follows, therefore, that the relator is entitled to the *mandamus* of the court commanding the defendant to assemble and properly audit his claim, unless he has, by some act, concluded himself from asking this relief.

It appears from the evidence that after this proceeding was commenced this relator accepted the order of the said board for the sum of $60, the amount at which the said claim was assumed to be audited, and has drawn the money thereupon. It is contended by the defendant that the acceptance of the money found due him by the assumed determination of the board estops him from questioning the conclusiveness and validity of such determination. The authorities seem to sustain the defendant's contention. See *Peo-*

*ple* v. *Supervisors*, 33 Hun, 305; *People* v. *Supervisors*, 3 How. Pr. (N. S.) 243; *Chase* v. *County of Saratoga*, 33 Barb. 603. It seems to be held in *People* v. *Supervisors*, *supra*, that the acceptance by the relator of these moneys has foreclosed his right to make this application, even though accepted after the proceedings were commenced. This issue is not raised by the return of the defendant, but the evidence was submitted without objection on behalf of the relator, and the issue accepted. See *Frear* v. *Sweet*, 118 N. Y. 454, 23 N. E. Rep. 910. It may be claimed by the relator that the acceptance of the order from the board was conditional. The evidence is that when he accepted it he stated that he did it without prejudice to his rights in this proceeding, and that the supervisor who delivered the order assented to the condition imposed; but it was clearly beyond the power of the supervisor to make for the board any assent to such a condition. The reason, also, which underlies this rule of estoppel is inconsistent with a conditional acceptance. Having accepted the benefit of the assumed adjudication of the board, he is by law precluded from questioning its validity. It has been held that an acceptance under protest is still a bar to a prosecution of the relator's claim to a balance of the moneys. *Chase* v. *County of Saratoga*, *supra*. Inasmuch, therefore, as the relator has, by his acceptance of the order made upon the assumed audit of the defendant, foreclosed his right to demand the balance of the bill, he is not entitled to the peremptory writ which he asks, and the alternative writ must be dismissed. As the defendant, however, has shown cause against obeying the command of the writ, by matters arising subsequently to the issuance thereof, it is not entitled to costs of this proceeding.