(140 App. Div. 759.)

PEOPLE ex rel. McHENRY v. BOARD OF SUP'RS OF MADISON COUNTY.

(Supreme Court, Appellate Division, Third Department.   November 16, 1910.)

1. COUNTIES (§ 204*)—CLAIMS AGAINST COUNTY—BOARD OF SUPERVISORS—AUDIT—HEARING.

In the audit of claims against a county before the board of supervisors, they may obtain information on which they may act, apart from any formal hearing, and such information need not be in the form of legal evidence in a court of law, and, where the claimant is allowed to produce witnesses and present his claims to the full board, he cannot object.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 312–321; Dec. Dig. § 204.*]

2. COUNTIES (§ 206*) — CLAIMS AGAINST COUNTY — BOARD OF SUPERVISORS—AUDIT—CONCLUSIVENESS.

An audit by the board of supervisors, rejecting a claim is conclusive against a subsequent allowance of the same claim.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 322–330; Dec. Dig. § 206.*]

3. COUNTIES (§ 205*)— CLAIMS AGAINST COUNTY—BOARD OF SUPERVISORS — AUDIT—REVIEW—EVIDENCE.

The determination of a board of county supervisors disallowing certain claims against the county for printing held, under the evidence, to be a question of fact for their determination, which should not be reversed.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 328–334; Dec. Dig. § 205.*]

Certiorari on the relation of Luke McHenry to review an audit of the Board of Supervisors of Madison County disallowing relator's claim for printing.   Affirmed.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

J. F. Connor, for relator.
E. L. Hunt, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SMITH, P. J. The relator, Luke McHenry, is the publisher of the Oneida Union, a weekly newspaper published at the city of Oneida, Madison county. Immediately preceding the general election of 1908, the relator's newspaper, the Oneida Union, was designated with three others to publish the official list of nominations, as required by the election law. This list of nominations was published by the relator. After the election of 1908, at the annual session in November of that year, a bill for publication amounting to $246 was presented by the relator. This bill was allowed by the board of supervisors at $123. The amount thereof was included in an order with other sums owing to the relator, which order the relator cashed. In the next year the relator's other newspaper, the Chittenango Times, was designated with two other newspapers to publish the official nominations for the year 1909. The list was so published, and the bill for $30 was thereafter and in November, 1909, presented to the board of supervisors for such publication. Together with this bill for this publication in 1909 was presented a claim for $123, as the balance unpaid upon the bill presented the year before. The committee on printing reported to reject the bill for $123 and to allow the bill for the printing in 1909 at $13.50. The relator requested a hearing before the board, which was given him. He produced as witnesses in his behalf himself and one Broad, who was interested in a similar bill for similar services, which was then being considered. These witnesses swore to the value of the publication as $12 per column, but swore, however, that for commercial advertisements their space sold for different prices, ranging from $2.50 to $8 a column. One of the members of the board had written to other county clerks to find out what was paid by them, and letters in response thereto were produced before the board over the objection of the relator. The parties submitted their claims by argument before the board, which adopted the report of the committee as made, rejecting the bill for $123. To review this determination this writ of certiorari has been issued.

As to the form of procedure necessary to constitute a legal audit, the relator cites the decision of People ex rel. Bliss v. Board of Supervisors of Cortland County (Sup.) reported in 15 N. Y. Supp. 748. That opinion was written by myself as expressing what to my mind was a fair method of procedure which the law should exact before a creditor of the county should be required to be satisfied with the judicial determination of his claim. Later authorities, however, seem to be less exacting as to the requirements of a formal hearing than at that time seemed to me proper. The supervisors may acquire information upon which they may act apart from any formal hearing, and such information, if acquired apart from the formal hearing, necessarily need not be in the form of legal evidence in court. In the case at bar the relator has had his hearing; has been allowed to produce witnesses, to swear them, and to present his claims before the board in full. He has had therefore all the rights which the courts seem to guarantee him as to the form of presenting his claim when he would choose to serve the county for compensation.

It is not important to consider here whether the audit of 1908 was conclusive, so as to bar any future presentation of the claim. The

claim for $123 that remained unpaid of the former bill was heard upon the merits, as was the claim for $30 for the printing of 1909. Both claims after such hearing upon the merits were rejected. The same rule adopted by the supervisors in reaching the conclusion upon the $30 claim for the printing of 1909 would lead to the entire rejection of the claim for $123, whether or not the fact was also considered that the claim had been passed upon by a former board of supervisors and could not be reopened. We have no doubt, however, that within the authorities the audit of 1908 was a bar to a further credit of this claim in 1909. See Osterhoudt v. Rigney, 98 N. Y. 222; People ex rel. Smith v. Clarke, 174 N. Y. 263, 66 N. E. 819.

It cannot be said that the determination of the board of supervisors was against the weight of evidence. The two witnesses who swore to the value in behalf of the relator were both interested witnesses; their cross-examination showing that commercial rates were much below the rates claimed for these publications. The other evidence, although not under oath, which was before the board, presented a fair question of fact as to the value of the publication, and with their determination upon this question we do not feel justified upon the record in interfering. The determination should, therefore, be confirmed, with $50 costs and disbursements.

Determination affirmed, with $25 costs and disbursements. All concur.