By the Court,

Marvin, J.
The defendant was a supervisor of one of the wards in the city of Buffalo, and a member of the board of supervisors of Erie county, and was indicted, tried and convicted of corruption in such office.
The substance of the first two counts in the indictment may be briefly stated thus : that the defendant procured from one Taylor articles (specifying them) for his own use, and that Taylor presented the account .for such articles, and *575 other articles furnished to other persons, for their use, to the hoard of supervisors, to be examined, settled and allowed as chargeable against the county; and that the defendant, as one of the supervisors, well knowing that the account was not a lawful charge against the county, confederating and combining with other, members of the board, knowingly, corruptly, unlawfully and partially voted that the account be allowed, and that it was allowed to the amount of $3926.81, and that it was paid by the county. It is alleged that this occurred at a meeting of the board, lawfully convened, on the 28th day of December, 1865. The third count contained a. similar .charge of corruption, in voting to allow another account, on the 16th day of December.
It is objected,by the defendant’s counsel, that the defendant was a judicial officer, and that the matter's charged against him were judicial acts done in the performance of his judicial duty; and that as such they do not form the subject of indictment.
Supervisors are required to meet annually for the dispatch of business' as a board ; they may hold special meetings ; and they have power to adjourn from time to time.- The board of supervisors have power :
1. To make orders concerning the corporate property of the county, as they shall deem expedient.
2. To examine, settle and allow, all accounts chargeable to such county, and to direct the raising of such sums as may be necessary to defray the same.. (1 B. 8. 366, §§ 1, 4.)
The authorities are uniform and consistent in showing the law to be, that no civil action can be maintained against the judges of the superior courts of general jurisdiction, for any act done by them in a judicial capacity. (Yates v. Lansing, 5 John. 282.) This rule embraces also all judges, justices and magistrates of .inferior courts, acting judicially in a matter within the scope of their jurisdiction. (Broom on Parties to Actions, 268, and cases hereinafter cited.)
*576 The rule also includes all officers charged with duties judicial in character, calling for the exercise of judgment and decision, acting within the scope of the authority conferred upon them ; and the motive which influenced the particular act or decision, cannot be inquired into. (Wilson v. The Mayor of New York, 1 Denio, 599. Weaver v. Devendorf, 3 id. 117.)
It is also well settled that no prosecution by information or indictment, can be. sustained against any judge of a superior court of record, for any act done by him as such judge. This rule does not apply to magistrates and justices of inferior courts, not of record, or other officers, authorized or required to perform special duties involving discretion, judgment and decision. Some of the authorities and cases consulted, will be here referred to, many of them cited by the learned counsel for the defendant in this case. I have already referred to Yates v. Lansing. It was a civil action against the chancellor to recover the penalty given by the habeas corpus act. Kent, Oh. J. delivered the decision of the court in an .elaborate and instructive opinion, referring largely to the English authorities. Greenvelt v. Burnwell, reported in 12 Mod. 386; 1 Salk. 396; 1 Lord Raym. 457, is regarded as a leading case, in which Holt, Oh. J. went largely into the law of judicial responsibility. The case is more fully reported in Raymond than in Salkeld.' It was a. civil action to recover damages for false imprisonment.. .The defendants-were censors of the college of physicians in London, and were empowered, by act of parliament, to inspect, govern and censure practitioners of physic, so as to punish by fine and imprisonment. They convicted, fined and imprisoned the plaintiff. The chief justice held, and he seems through his opinion to have regarded it as essential, that the censors were “justices of record.” He maintained that the record could not be traversed.. The question of liability arose, as we have seen, in a civil action, and the court coming to the conclusion that the defendants *577 were judges of record, empowered by act of parliament to judge, and to do what they had done, held they were not liable. The law now is, that no one acting in a judicial capacity, within the scope of his authority, is liable to respond in a civil action, whether the decision is evidenced by a record or not. The decisions in civil cases have no application to the present case. vChief Justice Holt, however, in his opinion, applies the same rule of irresponsibility to judges of the superior courts of record, in a suit by the king ; that is, a prosecution by presentment or indictment; and he cites some-cases to show that it had been held, that judges of courts of record, as a justice of oyer and terminer, were not answerable at the king’s suit, before another judge. But there is nothing in the opinion of the eminent and learned judge, countenancing the position that all persons acting in a judicial capacity are exempt from prosecution by indictment.
In Miller v. Seare, (2 Black. 1145,) DeQ-rey, Chief Justice, lays down the rule in civil cases very clearly. He says : “ In all cases where protection is given to the judge,
giving an erroneous judgment, he must be acting os judge. The protection in regard to the superior courts, is absolute and universal; with respect to the inferior, it is only while they act within their jurisdiction.” This is the true distinction, at this day, in this state, as to the liability of judges and magistrates in civil cases.
Lord Tenterden, in Garnett v. Ferrand, (6 Barn. & Cres. 611,) speaking of inferior justices acting within their jurisdiction, being called in question for errors of judgment, states the reason of the rule. “ In the imperfection of human nature, it is better, even, that an individual should occasionally suffer wrong, than that the general course of justice should be impeded and fettered by constant and perpetual restraints and apprehensions on the part of those who are to administer it.” He adds, “ corruption is quite another *578 matter. So, also, are neglect of duty and misconduct in office. For these, I trust, there is, and always will be, some due course of punishment by public prosecution.” The counsel for the defendant in that case, stated the law to be, that if a judge of the superior court acts corruptly, he may he proceeded against by impeachment; if of the inferior courts, by indictment or criminal information.
Russell, in his Treatise on Criminal Law, (vol. 1,135,- et seg.) educes from the cases the general rule : that the oppression and tyranical partiality of judges, justices and other magistrates, in the administration, and under color of their offices, may be punished by impeachment in parliament, or by information or indictment, according to the rank of the offenders, and the circumstances bf the offense. Thus, if a justice of the peace abuses the authority reposed in him by law, in order to gratify his malice, or to promote his private interest or ambition, he may be punished by indictment or ' information. If the justice has acted honestly and candidly, without oppression, malice, revenge or any bad view or ill intention whatever, though the act was illegal, the court will not punish him by the extraordinary course of an information, but will leave the party complaining to the ordinary method of prosecution by action or an indictment. The authorities cited fully sustain the text. (See also The King v. Borron, 3 Barn. & Ald. 432.)
The question is not one of jurisdiction, nor is it confined to ministerial acts, but if the officer acts from dishonest, oppressive or corrupt motives, he may be indicted and punished. Wharton in his American Criminal Law, under the title of Misconduct in Office, (§ 2514,) states the law : “If a public officer, intrusted with definite powers to be exercised for the benefit of community, wickedly abuses or fraudulently exceeds them, he is punishable by indictment, though no injurious effects result to any individual from his misconduct.” ■ The crime consists in the public example, in perverting those powers to the purpose of fraud and wrong, which *579 were committed to him as instruments of benefit to the citizen, and of safety to public rights. Among other authorities he cites The People v. Coon, (15 Wend. 277,) to show that a justice of the peace is indictable for misbehavior in his office, when he acts partially or oppressively, or from malice or corrupt motives. In that case Bronson, J. disposed of j the objection that a justice could not be indicted for any act done by him as a justice, by saying that there was nothing in it; that whenever justices act partially or oppressively, from a malicious or corrupt motive, they may be punished criminally. He cites numerous authorities. (See also The People v. Denton, 2 John. Cas. 277, note by Kent, J.)
The act of the board of supervisors in examining, settling and allowing accounts chargeable to the county, is, I have no doubt, a judicial act, and the supervisors in exercising the powers conferred upon them by the statute in this regard, are not liable in any civil action, however erroneous or wrongful their determination may be; and their decision is binding upon all parties concerned. (Weaver v. Devendorf, supra. Chase v. The County of Saratoga, 33 Barb. 603. The People v. The Supervisors of Livingston, 12 How. 204. S. C. 26 Barb. 118.) It is not necessary to multiply authorities.
In the present case the board of supervisors acted judicially in examining, settling and allowing Taylor’s account. The supervisors acting as a board, were charged and intrusted with definite duties and powers, to be performed and exercised for the benefit of the community, and if they wickedly abused, or fraudulently exceeded these powers, they are punishable by indictment. If, in the language of this indictment, such supervisor acting as a member of the board, knowingly, corruptly, unlawfully and partially, votes that an account presented against the county as a county charge, be allowed and made a charge against the county, he is guilty of a misdemeanor, and may and should be indicted, tried, convicted and punished. He has perverted the power con *580 ferr.ed; upon- him for the public good, to purposes of fraud and wrong; .he has acted from corrupt motives, and he is not beyond the reach of punishment. • Concurring in the sentiment expressed by Lord Tenterden, let us trust that there always will be some due course of punishment by projaecu-. tion, for corruption, neglect of duty or misconduct in office:
, If there is no other objection to this conviction, it should stand, and the'judgment upon it should follow.
It appears from the evidence that the annual meeting of! the board of supervisors, commenced October 3, 1865 ; that it. adjourned sine die, December 16 ; that on the 14th or 15th of. December, Martin Taylor presented several bills and accounts against the “ Brie county board of supervisors." They were very general, as thus : “.To stationery'furnished to. October 1, .§1277.40 ; to fifty gold pens and gold holders, $900.” They were examined and allowed, to the amount of $5130.81, the defendant voting for their allowance. ■ The board was again convened, and was in session December :28. The accounts were again brought before the board by Taylor, it.having been alleged that there were some irregularities in the presentation and allowance of the accounts on the 15th December. The objection was now taken by some of the supervisors that their power as a board was exhausted by.th'e previous action. The defendant maintained the contrary, and the board s.o decided, and proceeded to examine and "settle, and allow the account. The sum now allowed was $3921.81. The' defendant voted for the allowance. Upon these facts appearing- on the trial, the position was taken by the defendant’s counsel that the defendant could not be convicted for his; act of the 28th of December, for the reason that, the board had. no jurisdiction in the premises, having exhausted. a.11 its power by the action on the 16th. The district attorney insists, .among other positions, as an answer -to this posi- ' tion, that the action of the board on the 16th December, Was without jurisdiction, and, therefore, void. , ,
.... I have examined the statute referred to, and am satisfied *581 that the board had jurisdiction of the account on the 16th December, and that the decision then made was binding upon the parties—Taylor and the county. But it does not, in my judgment, follow that the action of the board on the 28 th December, was void for want of jurisdiction ; nor will it, in my opinion, if we should hold that the power of the .board was spent by its action on the 16th December, follow that the defendant could not be convicted for his corrupt act in voting for the account on the 28 th December.
It is undoubtedly a general rule, that a special power conferred upon officers or other persons, affecting the interests or rights of others, can only be exercised once. When the officers or body upon whom the power is conferred, have executed the power, the authority ceases, and the power becomes functus officio. It is this rule which the counsel for the defendant invokes. I think it is not applicable to this case. The only case cited, which may perhaps be fairly claimed as in point, is The People v. The Supervisors of Schenectady County, (35 Barb. 408.) In this case Justice Potter delivered an able and elaborate opinion. He has not entirely satisfied me that he properly applied the rule functus officio to the case. The board of supervisors on the 10th day of December, by a resolution, apportioned to the several towns and wards in the county, the amount of county charges that had been audited, according to the value of the real and personal estate in the towns, etc. as apportioned and equalized by them. The next day the board, by a resolution, reconsidered the resolution of the previous day, and by another resolution again apportioned and equalized the assessments of value in the towns and wards, upon a new and 'different basis. Each proceeding was strongly opposed, and each party moved for a mandamus to compel the board to perform the ministerial duty of attaching the warrants for the collection of the taxes. The court held, that the proceedings on the 10th December were valid,1 and that the board on that day exhausted its authority under the statute, *582 and that it had no power to reconsider, review, revise and annul their own judicial action, when it had been once legally exercised. The parties who were interested in maintaining the proceedings of the 10th December, insisted upon their rights in the decision then made. I have looked into the authorities cited by the learned judge, and it may aid us in coming to a correct conclusion, to bring some of them into present view. In Jermaine v. Waggener and others, (1 Hill, 279,) the power of the canal commissioners, under the act, was special and restricted. It was exercised by an examination, surveys and estimates, and- the adoption of a plan. After the work of construction had proceeded several years, the commissioners modified the plan in one particular, to-the injury of the plaintiff when carried into effect. The court very properly applied the rule functus officio, remarking that the commissioners having once passed upon the question, their powers were at an end ; that their powers were quasi judicial; that' the adoption of a specific plan was but another name for the rendition of a judgment by a court of limited jurisdiction ; that such a step was, in its nature, irrevocable, and incapable of modification; that it should, above all, be so held, after it had been acted upon and purchases made, or some other valuable interests acquired in reference to it.
Some of the cases referred to, relate to the action of courts or judicial officers, acting under special or limited powers ; some of them to the action of boards of supervisors under a special authority, as in the case of The People v. Ames, (19 How. 551.) The board had authority, by statute, to limit the number of superintendents of the poor to one. The board exercised the authority, and reduced the number to one, and in a subsequent year voted to raise the number to three. It was held that the board had' no power thus to restore the number to three.
The cases where the rule we are considering has been *583 applied, are. numerous, and Justice Potteb has cited many of them.
In all the cases, some right has been acquired by the decision, and ■ the party beneficially interested has resisted any subsequent action of the court, officer or body authorized to decide, by which the party’s interest should be changed or modified ; and the question has invariably arisen in considering such claim, and whether it has been affected by any subsequent action of the court, or officer or body authorized by the statute to decide, and in the absence of any authority to reconsider or revise the decision, I certainly doubt, as to the proper application of the principle in the The People v. The Supervisors of Schenectady County. It may be that when the board had once exercised the power of apportioning the tax as seemed to them equitable and just, under the power conferred by the act of 1838, (ch. 314, § 1,) the power was at an end. The power was in its nature judicial, and the act of apportionment' was a decision in which each town and ward was interested. It is, nevertheless, a stringent application of the rule functus officio to say that the board, during the same sitting, cannot reconsider its action. The meeting of the supervisors is “ for the dispatch of business as a board.” It is agreed that some of their powers are legislative, some ministerial, and some judicial or quasi judicial. I agree that the power to examine, settle and allow accounts is in its nature judicial, and that parties interested are bound by the decision in all cases calling for the exercise of judgment and discretion ; but,, in my opinion, the same board of supervisors may re-examine an account once passed upon, and, in fact, reject it, or reduce the amount first allowed. The claimant acquires no fixed right until the final action of the board upon his claim ; and until he has received the order for the payment of his claim, the board has jurisdiction over it.
Such, I understand, has been the constant practice of boards of supervisors. Suppose an account has been allowed *584 •and the same board becomes satisfied that it has no foundation in justice ; that it should not have been allowed, or only a,part of it; can it be that this same body, met for the dispatch of business, cannot reconsider their act, and do justice between the claimant and the county. If they cannot reconsider their decisions touching accounts, then the disallowance of an account must be final. Having acted once upon the account, that is the end of the matter, and no subsequent board can examine and allow it. It is to be observed that the power “ to examine, settle and allow accounts chargeable against the county,” is very general. It is a power in constant exercise by the board during its meeting. The exercise, of it constitutes the principal business óf the board. The meeting may, and usually does, continue for weeks. These accounts are usually referred to committees, charged with the duty of; examining them, and reporting upon them. The accounts against the county must be passed upon, and the aggregate of the accounts allowed be ascertained, before the board can, with proper intelligence, “ direct the raising of the sums necessary to defray the same.” í: We aré clearly of the opinion that the action of the board of supervisors touching the examination, settlement and allowance of accounts against the county, is under the control :of the board during its meetings for the dispatch of business as.a board, and that it may revise and correct its proceedings, and that it is the final action of the board that is binding upon the parties claimant and the county. Arbitra^ tors have full control over the award until it is published. (Russ. Arb. 237. See as to a referee in a civil action, Ayrault v. Sackett, 17 How. Pr. 507.)
If we should come to the conclusion that the action of the board on the 16th December, upon Taylor’s account was final, arid that, the board had no jurisdiction to re-examine it, we should still be of the opinion that the defendant could be properly convicted for his corrupt act on the 28th December.
*585 What is this case ? The defendant was a supervisor—an officer charged with duties and trusts, and clothed with powers of great importance to the public. In executing those duties and powers he acts corruptly. He is faithless to his trust. He unites in acts tending to defraud the public, and by which the public is defrauded. He acts as a supervisor. When arraigned for his corrupt acts, can he be heard to say, true, my acts were unlawful, partial and corrupt, and I was acting in my official capacity as supervisor, but the body of which I was a member, composed of supervisors like myself, and acting as such, had no jurisdiction in the matter upon which we acted, because it had by its previous action of the like character, not mentioned in the indictment, exhausted its authority ! Taylor submitted the account on the 28th December, and the board again took it up and acted upon it, having first decided that it had jurisdiction. There is no law or reason for the position that the supervisors were not liable for their corrupt acts on the 28th December. The crime consists in acting corruptly as supervisors—official corruption—misconduct in office. It is not essential that the board or officer should have jurisdiction of the subject matter upon which it or he acts. If the officer wickedly abuses, or fraudulently exceeds his powers, he is punishable by indictment.
It is not essential that any injurious effects should result to individuals from the misconduct of the officer. (Wharton’s Am,. Cr. L. 2514.)
If the board of supervisors act without jurisdiction, their decision will not be binding upon the parties intended to be affected by the act. (Chemung Canal Bank v. The Board of Supervisors of Chemung, 5 Denio, 517. The People v. Lawrence, 6 Hill, 244.) But the fact that the board exceeded its powers will constitute no defense for the supervisor, whose act as supervisor proceeded from corrupt and wicked motives. We think the defendant was properly convicted under the two first counts in the indictment, assuming that *586 they are to be limited and confined to his act on the 28th December. But why so limit these counts ? The proof on the trial showed the votes of the defendant on the 16th December, when Taylor’s accounts were first examined, settled and allowed, at an amount larger than was allowed on the 20fch December. No question is made as to jurisdiction on the 16 th December. Why not refer these counts to the act of the defendant on the 16th instead of the 28th December ? It is a rule that time and place, when and where the crime was committed, must be stated with certainty in the indictment, but it is not necessary to prove them on the trial as stated, unless they are necessary ingredients in the offense. {Arch. Or. PI. 40, 41.) In this case it was not material whether the crime was committed on the 28th or 16th December, nor was the amount of the account as allowed material. In short, the evidence of the defendant’s act on the 16th December, proved every material averment in the two first counts.
[Erie General Term,
September 3, 1866.
Again, there was a third count, charging the like corruption in voting on the 16th December, in favor of an account presented by John McNamara, for spirituous liquors furnished to the supervisors. The verdict is guilty of the offense charged in the indictment. This is a general verdict' of guilty. The rule is, that when one count in the indictment is good, and the verdict is guilty, the conviction is to stand. (See Guenther v. The People, 24 N. Y. Rep. 100.)
There was no error committed upon the trial, and the conviction must stand.
Grover, Daniels, Marvin and Davis, Justices.]