People *ex rel.* Martin agt. Earle.

## SUPREME COURT.

THE PEOPLE *ex rel.* PATRICK MARTIN agt. ABRAHAM L. EARLE, Auditor.

SAME agt. ANDREW HASWELL GREEN, Comptroller.

*Mandamus to auditor and comptroller — to audit and pay relator's claim.*

A *mandamus* will issue against the auditor, and also one against the comptroller of the city of New York, requiring them to audit the voucher and pay the amount thereof to the relator for services rendered by him for the county, as assistant janitor to the new county court-house, where his claim has been properly adjusted, audited and allowed by the board of supervisors, and it appears that there is an unpaid balance in the treasury appropriated for such expenses.

And it is no answer to the relator's claim, by these officers, to assert that the relator's name is not on the pay-rolls of the commissioners of the court-house for the time he claims pay. That is a matter with which they have nothing to do. The board of supervisors have attended to that duty.

The duties of boards of supervisors generally, and especially in the city and county of New York, in connection with the duties of auditor and comptroller, considered and discussed.

*New York Special Term, October,* 1873.

MOTIONS for a peremptory writ of mandamus, requiring the auditor to audit and the comptroller to pay the claim of the relator.

*Abraham R. Lawrence and Elliot Sandford,* for relator.

*E. Delafield Smith,* for respondents.

FANCHER, *J.*—The relator moves for a mandamus to the auditor to audit and allow, and for a like writ to the

People *ex rel.* Martin agt. Earle.

comptroller commanding payment of his claim of $240, for his compensation as assistant janitor of the new county court-house.

He swears that on the 1st day of May, 1870, he was appointed assistant janitor of the new county court-house by the court-house commissioners, and that his compensation was fixed at three dollars per day; that he thereupon entered upon the performance of the duties of the position, and faithfully performed the same to the 1st of June, 1871, when he ceased, because payment for his services was refused.

He further states that he was paid for his services up to the 1st of December, 1870, and also for the months of February, March and April, but for December, 1870, and January and May, 1871, he has not been paid.

His affidavit further shows that on the 9th of December, 1872, the board of supervisors audited and allowed his claim at $240, and directed the comptroller to pay the same from the proper appropriation.

It is further alleged in the moving papers that of the appropriations for cleaning and supplies for county purposes, for the year 1872, there remained unexpended on the 31st of December, 1872, the sum of $18,132.52, and of the appropriation for like purposes, for the year 1873, there remained on the 12th of September, 1873, unexpended, $8,783.50, from which appropriations the relator's claim could be paid; but, after proper demand, the auditor has refused to audit and the comptroller has refused to pay the claim.

The auditor, in answer to the relator's affidavit, states that the relator's name is not on the pay-rolls of the commissioners of the court-house, for December, 1870, and January and May, 1871, and that he was not recognized by the commissioners as their employe during that time; also that there is no money in the treasury appropriated or legally applicable to the payment of the relator's claim.

It appears, on a reference to the printed proceedings of the supervisors (*p.* 239), that a special committee was

appointed on the 24th of June, 1872, to inquire into and report to the board as to all claims which may be fairly due for labor of employes who have actually rendered service in the maintenance of the new court-house under the direction of the court-house commissioners. On the 9th of December, 1872, the special committee reported that they had adjusted the claims of certain persons who had presented themselves before the committee, and they submitted a resolution that the claims of seven persons for certain specified sums, among them Patrick Martin, assistant janitor, $240, for services in the new county court-house, be audited and allowed at the above amounts, and the comptroller directed to pay them from the proper appropriation. The resolution was adopted by a unanimous vote.

A provision was contained in chapter 590 of the Laws of 1857, which is similar to that contained in chapter 190 of the Laws of 1870, to the effect that the finance department of the city shall have the like powers and perform the like duties in regard to the fiscal concerns of the board of supervisors as the department possesses in regard to the concerns of the corporation of the city of New York, and that all moneys drawn from the treasury, by authority of the board of supervisors, shall be upon vouchers for the expenditure thereof, examined and allowed by the auditor and approved by the comptroller.

It has been contended that this statute of 1870 substitutes the auditing power of the comptroller for that of the board of supervisors, or is concurrent with it; I do not assent to the proposition.

It must be conceded that, were it not for the statute just quoted, the audit and allowance, by the supervisors, of a claim which is a proper and legal county charge would be conclusive, and the finance department would, thereupon, be obliged to pay it (1 *R. S.*, 367, § 4, *sub.* 2; 1 *R. S.* [*5th ed.*], 848; *People* agt. *Lawrence*, 6 *Hill*, 244; *People* agt. *Supervisors of Dutchess*, 9 *Wend.*, 508). But the statutes of 1857

People *ex rel.* Martin agt. Earle.

and of 1870 have unquestionably thrown a new safeguard around the treasury.

It is that all moneys drawn from the treasury by authority of the board of supervisors shall be *upon vouchers* for the expenditure thereof.

This condition is supplied in the present case by the relator's bill for three months' services, duly audited and allowed by the supervisors.

In this case the auditor has not examined and allowed the voucher, nor has the comptroller approved of it. Such audit, allowance and approval are essential prerequisites to the payment of the claim (*People ex rel. Ellis* agt. *Flagg*, 15 *How. P. R.*, 554; *People ex rel. Brown* agt. *Green* [*MSS.*], *general term of November*, 1874).

Yet, where the relator has been properly employed, has rendered the services required, and his claim has been audited, approved and ordered to be paid by the board of supervisors, he has not only a just claim against the county, but a right to have his voucher audited, allowed and approved and to have his claim paid by the finance department. The case last cited is authority for such proposition.

If the case of *Ellis* (*supra*) be supposed to be an authority against the proposition, it may be answered, there is a later authority in favor of it (*People ex rel. Brown* agt. *Green* [*MSS.*], *general term decision*).

COMSTOCK, J., in *People* agt. *Flagg* (17 *N. Y.*, 588), in relation to a claim against the city, said, the comptroller could not be compelled to draw his warrant until the claim was audited according to law.

The due employment of the relator by the common council, or their recognition of his services, *gave him a just claim against the corporation* and a right to have his account audited in the manner provided.

The adjustment of the amount belonged to the auditing bureau in the department of finance, and if that department

or bureau should refuse to audit it a mandamus would be an appropriate remedy to compel them to do so.

When the claim is thus audited it is presumed that the comptroller can be compelled by mandamus to draw his warrant for the sum allowed.

The reasoning of this decision is consistent with just prin ciple, and is applicable to the present case.

The auditing bureau in the finance department cannot arbitrarily refuse to examine and approve the proper voucher for an audited claim, nor can the department refuse to approve or pay such a claim. The auditing bureau cannot reverse the action of the supervisors.

When the amount has been ascertained and fixed by the board of supervisors, and the services for which the claim was made have been rendered to the county, it is not competent for the auditor to refuse to audit the voucher, nor the comptroller to refuse to approve it or pay the claim.

The intention of the statute, plainly, is not to substitute the auditor for the supervisors, but it is to grant to him power to audit the voucher for claims on the treasury, so that he may examine and ascertain whether they have been audited and allowed by the board of supervisors.

If so audited the voucher thereof should be produced to the finance department. There may be an audit and allowance by the supervisors when the amount has not been extended; *e. g.*, their audit of a janitor's claim may fix his compensation at a specified sum per month for certain specified months.

The auditor's duty would be to extend or state the aggregate sum allowed to the claimant, so that the examination of the claim should appear and the voucher be audited at the proper sum; but he clearly would have no power to change the rate to another sum per month, nor to refuse to audit the voucher at all.

The board of directors is, by law, charged with the management of the affairs of a corporation, as supervisors are of the affairs of a county

Should the directors employ a janitor, fix his salary, and after a term of service audit his bill and direct that it should be paid, would it be contended that an auditor of the vouchers for claims against the corporation and its cashier, though the former were empowered to audit the vouchers and the latter to approve the same, could overrule or reverse the action of the directors as to the merits of the claim.

The language of judge COMSTOCK would be applicable to such a state of facts in respect of a county charge. Should the auditing bureau refuse to audit, or the disbursing officer refuse to pay, a mandamus would be an appropriate remedy to compel them to do so.

*The People ex rel. Kelly* agt. *Haws* (12 *Abb. Prac.*, 192), it was held that the provisions of the act of 1857 did not give the comptroller power to examine and disallow county charges which had already been examined and allowed by the board of supervisors, and that the power in respect to such claims was limited to the examination of vouchers.

That decision is sustained by the literal and grammatical construction of the law of 1870.

The language is: "All moneys drawn from the treasury, by authority of the board of supervisors, shall be upon vouchers for the expenditure thereof, examined and allowed by the auditor and approved by the comptroller."

That is, when the board of supervisors, by the authority vested in them, have ordered a county charge to be paid, there shall be presented to the auditor the proper voucher for the expenditure, which he shall examine, and, if sufficient, shall allow, and the comptroller shall approve of the same before the money is paid. The check intended by this statute is one to prevent payment without proper vouchers.

It certainly was not the intention of the statute to substitute a new government in county affairs, or make the board of supervisors subordinate to an auditor or to the fiscal officer of the treasury.

As was well observed by Mr. justice SUTHERLAND, in the

case last cited, "the discretionary nature of the power vested in the board of supervisors to examine, settle and allow all accounts chargeable against the county, would appear to be inconsistent with a right on the part of their fiscal agent or disbursing officer to question the regularity or propriety of the exercise of their discretionary power." (*See, also, People ex rel. Brown* agt. *Green* [*MSS.*], *general term of Nov.*, 1873).

In the *People* agt. *Supervisors of Delaware County* (45 *N. Y.*, 199), it was held that charges for services rendered to the county could be collected in one way only. The account of them must be presented to the board of supervisors of the county, which alone has the power to examine, settle and allow, and to raise the money by tax with which to defray the same.

It was also said in that case: "The court has the power to decide whether a rejected claim is a legal claim against the county; and if it be a legal claim it may instruct and guide the board of supervisors, by *mandamus,* in the execution of their duty."

The board of supervisors derive their powers of local legislation and administration from the constitution and laws of the state, and their action as to county affairs, within the limits of their jurisdiction, is not subject to revision by the fiscal officers of the treasury.

Section 17 of article III of the constitution provides: The legislature may confer upon the boards of supervisors of the several counties of the state such powers of local legislation and administration as they shall from time to time prescribe.

Among the general powers conferred by statute on boards of supervisors, it is provided in the Revised Statutes (*vol.* 1, *5th ed., p.* 848) that they shall have power to examine, settle and allow all accounts chargeable against such county, and to direct the raising of such sums as may be necessary to defray the same.

Boards of supervisors, in auditing and allowing accounts, are limited to the powers conferred upon them by statute;

but if the suject-matter of the account be within their jurisdiction and they allow it, the county treasurer has no right to refuse payment on the ground that the allowance was too much or was made upon insufficient evidence.

This principle has been deliberately decided (*People ex rel. Merrett* agt. *Chamberlain of N. Y.*, 6 *Hill*, 244; *People ex rel. Onderdonk* agt. *Supervisors of Queens Co.*, 1 *Hill*, 195, 200).

Their act in examining and allowing accounts chargeable to the county is a judicial act and their decision is binding upon all parties concerned (*People* agt. *Stocking*, 50 *Barb.*, 573; *Weaver* agt. *Deafen*, 3 *Den.*, 117; *Chase* agt. *County of Saratoga*, 23 *Barb.*, 503; *People* agt. *Supervisors of Livingston*, 26 *Barb.*, 118).

If their decision be wrong, it can only be reviewed by a court of competent jurisdiction. It is not subject to revision by a fiscal officer of the treasury.

I therefore think that the claim of the relator, when it was examined, audited and allowed by the board of supervisors, and was by them ordered to be paid, became a legal and valid liability against the county.

A fiscal officer cannot thereafter become recusant and refuse to audit the voucher or to pay the claim.

When the supervisors have decided that the relator, as an employe of the county, has performed services for which he was entitled to be paid $240, it is no answer for the finance department to return, that the name of the relator was not on the pay-roll for the three months of such service, nor that the commissioners of the court-house did not recognize him.

The technical omission of his name on the pay-roll is of no importance, provided he actually rendered the service for which he was employed, as the supervisors have adjudged he did; and the alleged want of recognition by the commissioners of the court-house is answered by the decision of the supervisors adjudging that the relator performed the duties of his appointment for the time mentioned.

People *ex rel.* Martin agt. Earle.

The auditor states in his affidavit "that there is no money in the treasury appropriated or legally applicable to the payment of the relator's claim."

It is shown by the relator's affidavit, and not denied, that an unexpended balance of $18,132.52 remained in the treasury for cleaning and supplies, for county purposes, for the year 1872, and an unexpended balance of $8,783 on the 12th of September, 1873, for like purposes, out of which balances of appropriations the relator's claim can be paid.

It is, therefore, only a legal conclusion of the auditor to assert that there is no money in the treasury appropriated or legally applicable to the payment of the relator's claim.

The fact is not denied that moneys are in the treasury from which the claim can properly be paid, and the relator specifies the fund.

The motion for a mandamus to the auditor to audit the voucher and to the comptroller to approve the same and pay the claim, should be granted.