ANTHONY J. BLEECKER, Appellant, *against* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent.

(Decided February 4th, 1878.)

The Board of Commissioners of the Sinking Fund of the city of New York having passed a resolution employing the plaintiff to make an appraisal of property belonging to the city and county of New York, and by the same resolution having required the comptroller of the city of New York to make satisfactory arrangements with him as to his fees, and the plaintiff having arranged with the comptroller to leave the amount of his compensation to him upon the comptroller's promise that it should be liberal and satisfactory, and the comptroller never afterwards having fixed the amount :—*Held*, that the plaintiff was entitled only to such sum as the jury should find was a reasonable compensation for the services performed by the plaintiff.

*Held*, further, that after the services had been performed, a resolution of the board fixing the plaintiff's compensation at a certain sum did not, in the absence of the plaintiff's having acted upon the resolution by consenting to accept in payment for his services the sum so fixed, form a contract between the plaintiff and the board, and that the board having afterwards rescinded the resolution, it gave the plaintiff no right to recover that amount in an action against the city of New York.

*It seems*, that the Board of Commissioners of the Sinking Fund of the city of New York have no power to have made, at the expense of the city of New York, an appraisal of county property, or of property the management of which is not within the scope of, or has no relation to, the powers and duties of that board.

APPEAL by the defendant from a judgment of this court in favor of the plaintiff, entered upon a verdict rendered at trial term, and from an order denying a motion for a new trial.

The facts sufficiently appear in the opinions.

ROBINSON, J.—This action was brought by plaintiff against the defendants to recover from them the sum of $15,000 and interest for services rendered by him for defendants in May, June and July, 1871, as an appraiser of real estate belonging to the city and county of New York. He was so employed by virtue of a resolution of the commissioners of the sinking fund, passed May 1st, 1871, employing or retaining him, with Adrian Muller and Cortland Palmer, for that purpose, which also required that the comptroller first make satisfactory arrangements with them as to fees. The arrangement he made with plaintiff was, that it was left by plaintiff to him to fix the compensation, on his promise that it should be liberal and satisfactory.

The comptroller was then Richard B. Connolly. Plaintiff and his associates thereupon proceeded to make appraisements, not only of property belonging to the corporation, of proprietary right, and in its municipal capacity, but of almost every item of real estate, except perhaps the streets and avenues of. the city which it held " *publici juris*," *in trust for public use,* and for public purposes, including such as was held for " public charity and corrections," $13,538,000 ; " board of education," $6,093,570 ; " public squares and parks," $106,-416 46 ; Croton aqueduct department, $90,000,000, &c., the greatest part of which must have been acquired by public taxation, not for mere municipal, but for general governmental purposes, and was in no respect within the jurisdiction of the Board of Commissioners of the Sinking Fund.

The ordinances creating the sinking fund, quoted or mentioned in Valentine's Laws, N. Y., 727-8-9, have reference only to such property as *belonged to the city* (see also L. 1871, chap. 574). The resolution, so far as it related to *county* property, or to what was not within the scope of, or had relation to, their powers and duties, was *ultra vires,* so far as that board was concerned.

In the case of *Muller* v. *Mayor* (the plaintiff's associate) against the same defendants, brought to recover for similar services (reported in 63 N.Y., 355), the Court of Appeals say: " By the charter (L. 1870, ch. 137, sec. 115 [116], vol. 1, p. 359)

and laws of 1871 (ch. 574, sec. 9, vol. 2, p. 1247) the commissioners of the sinking fund *have power to sell or lease any city property* after public advertisement and appraisal under the direction of said board. By clear implication the appraisal, as well as the sale of city property, is under the direction of the commissioners of the sinking fund, who have full power to select the appraisers. This is included in the power to direct as to the valuation and appraisal. It was for the commissioners to determine when an appraisal was necessary, to enable them intelligently and properly to exercise their discretion and perform their duties in selling, or offering for sale, or in leasing the city property." * * * " They had the right to assume, that as to all the property which the commissioners *had power to lease or sell*, the employment was for some purpose connected with a lease or sale, and so within the authority of the commissioners." It was, therefore, with perfect justice and propriety that Comptroller Andrew H. Green in his report, made part of plaintiff's case, stated to his associates in the Board of Commissioners that "the duties of the commissioners of the sinking fund are special in their character, restricted to the preservation and proper investment of the funds committed to their care and management. The commissioners intrusted with the management of these funds had, so far as I can see, no concern whatever with the greater part of the real estate belonging to the city and county included in this appraisement." And upon the same subject the Court of Appeals, in *Muller* v. *The Mayor, &c.* (63 N.Y. p. 358), say, " the employment of the plaintiff and his associates was not *ultra vires,* and *so far as they rendered services for which, within the apparent authority of the commissioners,* they might have occasion, the plaintiff is entitled to recover." That court thus expressly indicates its views, that the authority of the commissioners to employ appraisers is limited to cases within their *apparent* authority ; not one capriciously assumed, but such as is clearly indicated by the statutes recognizing their duties and confining their powers to particular subjects.

It is in view of these facts and considerations that the.

effect of the resolution of the board, offered at the meeting of the 30th of October, 1871, and adopted (after a refusal to adopt the report of the comptroller) at a meeting held November 27, 1871, "That $15,000 be allowed and paid Anthony J. Bleecker for his services in appraising the value of the real estate belonging to the city and county of New York," and which, at a subsequent meeting of the board on the 8th of April, 1872, was rescinded, requires consideration.

The action of the board in employing him, or agreeing to pay him for appraising property over which they had no jurisdiction, was clearly illegal, and the resolution upon which this claim is predicated, conferred no rights to the sum so voted to be allowed him. Nothing in the decision of the Court of Appeals warrants any such assumption, and the case of the plaintiff, as presented by his complaint, as predicated upon the resolution of the 27th of November, 1871, as an official recognition by the sinking fund commissioners of his services in appraising "the real estate belonging to the city and county of New York," was of no legal effect, nor was any proof offered by him of the value in general of such services, when confined to such real estate belonging to the city as the commissioners might lease or sell, of any avail, when so unconfined or made immediately applicable to an appraisement having specific reference thereto, or as to which any such discrimination could be made by either the court or jury upon the testimony as presented.

This appeal is brought upon the exceptions taken by the appellant on the trial, as well as upon a case and appeal from an order denying a new trial upon points presenting such exceptions. Having regard thereto, plaintiff moved to strike out from the evidence the resolution of April 8, 1872, read by defendant's counsel, and which rescinded that of November 27, 1871, that plaintiff be allowed $15,000 for his services. This was denied and exception taken. The latter resolution having never been acceded to by plaintiff as a satisfactory adjustment of this claim, the commissioners, if

lawfully authorized to act, would have had an undoubted right to recall the offer, and the evidence was neither irrelevant nor immaterial to the issue.    The resolution besides, for the reason stated, being illegal to such extent as it assumed to allow compensation for the valuation of other property than such as they might sell or lease (*People* v. *Flagg*, 17 N. Y. 584), the next request, that the court direct a verdict for $15,000, on the ground that it was a completed contract, finds no warrant in law.    The request of plaintiff's counsel, that the judge charge the jury in the words of the opinion in *Muller* v. *The Mayor, &c.* (62 N. Y. p. 358), from and including the words " the arrangement, &c.," down to and including the word "liberal" on the last line of that page, was, in my opinion, properly refused, as inconsistent with the subsequent language of the opinion.    That statement is to be taken with its context, and is to be accepted as relating to the " ambiguity of the resolution," and as the court subsequently say (p. 360), that " the conclusion is one to be arrived at, not from the language alone, but from that, and all the circumstances proved, it was a question of fact for the jury, and not one of law for the court.    It was not a question of interpretation, but of inference and of fact."    The third request is of like character as those previously mentioned, and was properly denied.    The proposition of the judge submitted to the jury, that if it was the intention of the parties that plaintiff's compensation should be submitted solely to the comptroller, as sole arbitrator, " then his word was to govern," finds full recognition in the opinion of the Court of Appeals, while his further charge, that if they found, to the contrary, that he was entitled to a fair and reasonable compensation, fairly submitted to the jury the facts upon which plaintiff's claim could be presented.    A general, but in no respect special, exception was taken to these several propositions, and was unavailable.    A verdict in favor of the plaintiff was rendered for $4,018 50.    The basis of the recovery is not stated, but as the defendants do not complain, it may be presumed it was for the sum of $3,000, together with interest from July, 1871, when the appraisers made their report.    I am unable

to discover any variance in the charge from the terms of the opinion of the Court of Appeals, or other error, and am for affirmance.

LARREMORE, J., concurred.

CHARLES P. DALY, Ch. J., concurred in the result, delivering the following opinion :—

CHARLES P. DALY, Chief Justice.—I concur in the result, without expressing any opinion upon the question of *ultra vires*. I agree that under the view entertained by the Court of Appeals in the parallel case of *Muller*, that the proper course was to leave it to the jury to say whether the circumstances, position and relation of the parties authorized the inference that it was the intention that the whole question of compensation was to be left to the comptroller ; the plaintiff consenting to accept what the comptroller should determine to be a liberal or satisfactory compensation, and if the jury were of the opinion that it was not, that then the plaintiff was entitled to recover a fair and reasonable compensation for his services. That the determination of the compensation, under such an understanding, was not necessarily limited to the action of Richard B. Connolly, who then filled the office of comptroller ; but meant the officer, the person having the official authority to act on behalf of the city after the services had been performed, and that the plaintiff so understood it, appears in the fact that after he had applied to Connolly to fix the amount, and Connolly neglected to do so, he applied to Mr. Green, Connolly's successor in the office, who promised to submit the matter to the board, and have the award made, telling the plaintiff to come before the board and be heard, which the plaintiff did four times, but was never called upon to be heard.

When the appraisers applied to Connolly, and they, at his request, put down on a piece of paper what one-eighth of one per cent. upon the appraisement would amount to, that officer said, that it would have to go before the board, and

they replied, " We don't want the board ; you, as comptroller, can fix it." Upon which Connolly said, " You attend the meeting of the board."

The bill of the appraisers was afterwards received by the board, and was referred by it to Mr. Green, who was then comptroller, to examine and report. Afterwards, communications were received from the appraisers, by the board, placed on file; and on motion of the chamberlain, a resolution was offered, allowing $15,000 to each of the appraisers, which resolution was also referred to the comptroller ; and he afterwards made a report that $3,000 be paid to each of them for their services, which report was not adopted ; but on the motion of the mayor a resolution was passed, allowing the plaintiff $15,000 ; which resolution, at a subsequent meeting of the board, was rescinded.

After the services had been performed, it was not in the power of the board to fix the amount of the plaintiff's compensation, without his consent. He was either entitled to have it fixed by the comptroller, or entitled to what his services were reasonably worth. I do not see that the action of the board, either in passing the resolution to pay him $15,000, or afterwards in rescinding it, in any way affects the question. Even if they had the power to fix absolutely the amount that was to be paid to the plaintiff, without his consent, the same board would have the power to reconsider the amount allowed, and to reduce it, or reject it altogether, leaving the plaintiff to his legal remedy. (*The People* v. *Stocking*, 50 Barb. 573.) They probably rescinded the resolution previously adopted, upon the assumption that, as by the first resolution, appointing the appraisers, the comptroller was first to make a satisfactory arrangement with them as to their fees ; and as they had performed the services upon his assurance that he would afterwards fix an amount to their entire satisfaction, that the disposition of that matter was with that officer, upon such an understanding, and not with the board. The plaintiff's own valuation of his services, as appeared upon the trial, was much higher than $15,000—his testimony being that they were worth $50,000—

and there is nothing in the case to show that he consented that the board should fix his compensation at the amount which it did. The plaintiff having given the resolution of the board—allowing $15,000—in evidence, the subsequent resolution was properly admitted; and the plaintiff was not entitled to have the jury instructed to give a verdict for $15,000, upon the ground that it was a completed contract.

I therefore agree that the judgment should be affirmed.

Judgment affirmed.