PEOPLE *ex rel.* BAGLEY *et al.,* appellants, v. GREEN, Comptroller, etc.

*Mandamus — affidavits for — New York city — claims for services in opening and widening streets.*

On an application for a mandamus against the comptroller of the city of New York, requiring him to pay to the relators certain sums of money claimed to be due to them, for services performed in proceedings for the making of certain public improvements in said city, the relators' statement of the existence of the fund from which the demand of payment was made, was upon information and belief only, while the respondent positively averred that prior claims had been made against the fund, which were more than sufficient to exhaust it. *Held,* that the relators were not entitled to a mandamus.

Where the relators applied for writs requiring the comptroller to pay the amount of their claims out of particular funds, and it was shown that there were no such funds on hand, *held,* that the application could not be sustained by showing that the comptroller had the power of creating a fund for such payment by the sale of certain stock or bonds.

A statute under which proceedings were taken for widening and opening streets, gave to commissioners appointed thereunder the entire authority to be exercised under it, including that of employing surveyors, etc. The relator was appointed by them as surveyor, and rendered services as such. *Held,* that for such services the relator had no claim against the city, or any of its officers, or the fund to be created by the assessments, which could be enforced by mandamus or other proceeding;' that his remedy was solely and exclusively that given by the statute, which contemplated and provided for the presentation of his claims by the commissioners, as a portion of their expenditures, and the satisfaction thereof by their disbursement of the amount received for that purpose.

Commissioners can maintain an action against the city for their services and expenses in opening, extending and widening streets. Hence a mandamus will not lie against the comptroller to compel the payment thereof.

APPEALS taken by the relators in ten cases from orders denying motions made by them for writs of peremptory mandamus, to be directed to the respondent, Andrew H. Green, as comptroller of the city of New York, requiring him to pay the relators certain sums of money claimed to be due to them, respectively, for services performed in proceedings taken for the making of certain public improvements in the city of New York. Of the cases named, five were instituted upon the relation of John A. Bagley, two upon that of James S. Hennessey, one upon that of William Wood, one upon that of

Charles G. Cornell, and one upon that of Gratz Nathan. The improvement proceedings mentioned were instituted and carried on for the purpose of laying out, locating and establishing a public park or place, known as Riverside Park, along the Hudson river, between Fifty-ninth and One Hundred and Fifty-fifth streets; the widening and straightening of Broadway, between Thirty-fourth and Fifty-ninth streets; the opening of Sixty-eighth street, from the Fifth avenue to the East river, and for the extension of Madison avenue from One Hundred and Twenty-fourth street to the Harlem river, in the city of New York.

The claims of the relator, John A. Bagley, in the first five cases, are for services rendered by him as engineer and surveyor, together with a number of skilled subordinates, in making the necessary surveys, clearings and maps to be used in the proceedings taken and in making the improvements designed. And they amount, in the aggregate, to the sum of $199,949.18.

The claims of the relators in the other five cases are for the costs, charges and expenses of the respective relators for services performed and expenditures made by them as commissioners in the street proceedings for determining the value of property taken for such improvements, the assessments of the benefits produced thereby to other property, and the making of assessments to raise the funds required to defray the expenses of the same, amounting, in the aggregate, to the sum of $44,250.

The amounts claimed by the relators were adjusted and allowed by the court, on the confirmation of the commissioners' reports, as proper compensation for the services and expenditures claimed to have been made by them. But the writs applied for were denied, for the reason that the relators' remedy was by actions at law for the recovery of the amount claimed to be due; and from that decision the appeals were taken.

*T. C. T. Buckley, A. J. Vanderpoel,* and *Gratz Nathan,* for appellants: The right of recovery cannot now be questioned, and, as in an action the amount could not be disputed, public policy would dictate that it should not be held to be the appropriate remedy, as the corporation would be subjected to unnecessary expense. *People* v. *Brennan,* 39 Barb. 537.

It is the general rule, that as against the financial officers of a

municipal corporation, the payment of a legal liability established by judgment and payable out of taxes or assessments may be enforced by mandamus. Dillon on Municip. Corp., § 686; *Ex parte Hays,* 26 Ark. 510; *Brown* v. *Crego,* 32 Iowa, 498; *State ex rel. Zimmerman* v. *Justices Bollinger Co.,* 48 Mo. 475.

The payment of a judgment against the city may not be enforced by an execution. *Brincker* v. *Hoffman,* 2 Daly, 443; *Chicago* v. *Hasley,* 25 Ill. 595. The act of 1813 (2 Hoffman's Laws, 812, 813) conferred no remedy by action, except in favor of persons entitled to awards. A specific duty is imposed upon the comptroller, and he cannot answer that there is a concurrent remedy by action. *Adriance* v. *Supervisors of New York,* 12 How. 224; *People* v. *Mead,* 24 N. Y. 114; *People* v. *Brennan,* 39 Barb. 522; *Buck* v. *City of Lockport,* 6 Lans. 251; *McCullough* v. *Mayor, etc., of Brooklyn,* 23 Wend. 461; *People* v. *Taylor,* 45 Barb. 129; *People* v. *Flagg,* 17 N. Y. 585–589.

*E. Delafield Smith* and *Dexter A. Hawkins,* for respondent.

DANIELS, J. Although the special term, held at chambers, denied the motions made for the writs of peremptory mandamus, on the specific ground mentioned in the orders, that the relators can maintain actions at law for the recovery of their demands, this court is not, by that determination, restricted to that reason, if any other is shown by the papers, justifying the denial of this particular remedy. If any legal reason is disclosed by the papers used upon the motion and presented on the argument of these appeals, for withholding these writs that will necessarily lead to an affirmance of the orders, whether it be the same as was assigned for the making of the orders or not, before the writs of peremptory mandamus can be directed to issue, a proper case must be shown to warrant it. If, for any reason, the facts relied upon in the application are insufficient to entitle the relator to that remedy, under the well-settled principles of law applicable to it, an order denying it will not only be proper, but, beyond that, it will be the only lawful disposition which can be made of the application. The remedy by mandamus is one of an exceptional character, appropriate only to that class of cases where a clear legal right may be made to appear, without any other adequate legal means to redress and maintain it. The ordinary mode of redressing grievances supplied

by the common law is that of a legal action; but where that remedy cannot be properly resorted to, and a clear legal right exists requiring the performance of some specific act, then redress may be secured by mandamus. Where the fact upon which the right may depend is controverted, it must first be tried and determined, before a peremptory mandamus can be issued ; and that determination is to be made, not upon conflicting affidavits, but upon an issue framed upon the return to the alternative writ, to be tried by a jury, according to the course of the common law. In cases of the magnitude of those now presented, the peremptory writ should never be awarded upon affidavits, unless it be plainly made to appear that the public interests are not to be prejudiced or jeopardized by the proceeding. Ample time in all such cases is required for the full and complete investigation of the grounds on which the claims are predicated, in order that the justice, as well as propriety of payment may be fully established. The interests of the public can be in no other mode adequately protected, and the duty to be performed for that purpose is one which manifestly requires more time than is ordinarily afforded by the summary mode in which these applications are made. Its effective and complete discharge is more consonant to the deliberative proceedings of a legal action than the disposition of a special motion brought to a hearing on two, four, or even eight days' notice.

The applications on which the orders appealed from were made, proceeded upon the theory that the claims presented were payable out of the fund provided for the ultimate satisfaction of the expenses of the improvements and of the proceedings taken for making them, and it was stated in the affidavits made in their support, that the respondent had in his hands the necessary means for their payment, derived from that source. In all the cases, except the claim of the relator Nathan, for the extension of Madison avenue, the respondent denied the allegations made on that subject in support of the applications. The denials were that he had not collected, and had not in his hands, from the assessments made, an amount sufficient to pay the claims made by the respective relators, or to pay on their respective claims any sum whatever; and this denial was followed by the allegation that, at the time when the order to show cause was made, and also at the time of the making of his answer, no money collected from the assessments was in his hands, or under his control, but that claims then paid, that were

payable out of the assessments, or for the payment of which the city was to be re-imbursed out of the assessments, were at least equal to the whole amount collected.

The statements are objected to as evasive and ambiguous by the counsel for the relators. But even if they are liable to that criticism, they fall very far short of admitting the existence of the only fund out of which the relators have applied for the payment of their claims; and as long as no admission of the existence of such funds has been made on the part of the respondent, there was no direct evidence that it did exist in any of the cases, unless those of Nathan and the claim made for opening Sixty-eighth street constitute exceptions to that conclusion; for the affidavits made by the relators in support of the applications in the other eight cases simply stated that they were informed and believed that a sufficient amount of money had been collected and paid over to the comptroller, and was then in his hands or under his control applicable to the payments required to be made. This unsworn information, derived from some undisclosed source, very clearly failed to prove the existence of the fact on which the right to payment was rendered in great part dependent by these relators; and even if the respondent's denial were indirect and inartistic, it did not supply a sufficient degree of probability to the information relied upon in support of the applications to render it legal proof of the existence of the fact referred to. The supplemental affidavits made by the relators did not relieve their cases of this defect, for they are made up entirely by way of information and belief, predicated upon statements and admissions for which the respondent is not responsible, made by the deputy comptroller and the respondent's counsel.

But even though the relator Nathan stated in positive terms in his affidavit made for the purpose of supporting his application, that the respondent had collected and received, and then had in his hands, in the proceedings taken, more than sufficient to pay his claim, the statement was afterward shown by his supplemental affidavit to be entirely without foundation. For he then swore that the collections had amounted to the sum of $128,808.86, while the payments made for awards and expenses amounted to $591,880, which created a deficiency in the fund amounting to $363,071.14. Instead of the comptroller having a fund in his hands, out of which this claim could be paid, as the relator in the first place

stated he had, this second affidavit clearly showed that there was no reason for even suspecting its existence.

But the denial of the existence of the funds proceeded against on the part of the comptroller is not liable to the charges made concerning it on the part of the relators, for he distinctly and positively avers that he has not collected from the assessments, and has not in his hands, the amount required to pay the claim made, or any sum whatever; but on the contrary, that the claims previously paid which were payable out of the assessments, or for the payment of which the city was to be re-imbursed out of the assessments, were at least equal to the whole amount collected. This denial, followed by the statement and explanation afterward made, show that there was no such fund in the comptroller's hands as the relators, by their proceedings, were endeavoring to enforce payment from, and there was nothing whatever in the proof supplied by the relators from which the court could say that either was untrue. But, even if there had been, it would not have entitled the relators to their writs, because it would only show that such a controversy existed as the law required to be determined by a trial before a jury.

The claim made by the relator Bagley, arising out of the proceedings taken to open Sixty-eighth street, is no better sustained by him than those already considered, for his statement of the existence of the fund, from which his demand of payment was made, is confined entirely to the unreliable source of simple information and belief, while the comptroller positively avers that preceding claims had been made against the fund which were much more than sufficient to exhaust its amount. Whether the relator could, in any view, establish his right to paramount payment over those other claims was not made to appear, and as long as it was not the court could not certainly determine that fact in his favor.

In neither case was it shown that the funds proceeded against, and solely out of which the relators demanded payment, had any existence. On the other hand, the fact of their existence was explicitly denied in all the cases, except that relating to the opening of Sixty-eighth street, where the fund was more than exhausted by preceding demands filed against it. *Baker* v. *Utica*, 19 N. Y. 326. But the relators claimed that the comptroller had the power of creating the funds out of which they required him to make payment, by the sale of city improvement stock or assessment fund bonds. If he could do that, it would not sustain their applications for pay-

People ex rel. Bagley v. Green.

ment out of existing funds when it appeared that there were no such funds. Whether he could lawfully create such funds or not was not shown as a ground for issuing writs of mandamus requiring him to pay these claims out of funds then alleged to be in his hands, but as a reason why his denial of funds should be held to be unavailing. Besides that, the applications were not for writs requiring him to sell such stock and bonds, but it was solely for writs to require him to pay out of particular funds, when it was shown that there were no such funds on hand. The cases made by the relators were insufficiently sustained, as well as fully answered, and for both reasons their applications were properly denied. It would have involved an inexcusable want of authority for the court to have directed payment of either of these claims, under the circumstances shown, even if no other legal obstacle existed in their way.

By the provisions of the act under which the proceedings were taken for widening and straightening Broadway, for opening Sixty-eighth street, extending Madison avenue and locating and laying out Riverside Park, commissioners were required to be, and were, in fact, appointed by this court for the purpose of exercising the authority and discharging the duties required in the promotion and consummation of those improvements. The object of their appointment was the performance of the duties prescribed by the act, and among them were, not only the duties of determining the land to be taken and the apportionment of the damages and benefits resulting therefrom among the persons and upon the property affected, but, beyond that, they were required to cause all such surveys, maps, profiles, plans and other things, as they might judge necessary to be done, to be made and prepared for their use. 2 Rev. Laws, 409, 410, § 78. The terms, as well as the general scope and spirit of this section, and of those succeeding it, relating to such enterprises, exhibit it to have been the design of the legislature in the enactment of the law, that the entire authority to be exercised in determining the land to be taken, the compensation to be made for it to the owners and others interested in it, and the persons and property benefited by the improvement upon whom the expenses should be assessed and by whom they should be ultimately borne, should be possessed and used by the commissioners appointed under its provisions by the court. They constituted the tribunal in which all the powers provided by the statute for the promotion of the object designed to be accomplished by the proceedings prescribed became

People ex rel. Bagley v. Green.

invested, and it was accordingly, by their authority and under their employment, that all surveys, maps, profiles and plans deemed to be necessary were prepared and made. The persons making them necessarily did so for them by their engagement and under their direction. They were the subordinates and servants of the commissioners so far as they acted in the accomplishment of those results. The commissioners, through them, under the authority given by the statute, and pursuant to its terms, caused the surveys, maps and profiles to be made. That was the mode required to be pursued, and the affidavits of the relator, Bagley, on which his applications for writs of mandamus were made, show that it was, in fact, the course adopted by the commissioners; for he states that he was employed and appointed by them as surveyor to the commissioners and performed his duties under that employment; and those duties were performed in executing the authority conferred upon them.

For the services so performed the statute does not secure to the person or persons performing them the right to resort to the city itself or the fund to be created by the commissioners' assessments for compensation. Neither does it confer upon the commissioners the power of investing the persons employed by them for the purpose of making surveys, maps and profiles with the right to proceed either against the city or fund for their remuneration. If it did, as they are not restricted to the employment of any specific number of such persons, a multitude of suits, or proceedings by way of mandamus, might be incidentally provided for, alike vexatious to the public authorities and detrimental to the public interests. In the supplemental affidavit of this relator, the statement is made that his claims represent not only his own services, but also those of a number of skilled employees and experts in such matters, and if he can proceed as an independent claimant for compensation no good reason exists for denying the same privilege to each of those persons, for as the statute has secured no such right as the result of the commissioners' employment, it must be maintained, if that can be done at all, on the simple circumstance that services have been performed for them and in pursuance of their authority. That is as true in the case of each one of such employees and experts as it is in the case of the relator. If he can recover for his services, by an independent proceeding, either by way of suit or mandamus, then the same right should be conceded to them, for their claims must be equally meritorious. But that was not the design or intent of the act under

which the proceedings were carried on. By that, the tribunal or body, between the public and the work to be performed, was the commissioners, and they alone. The proceedings provided for were to be, and were, carried on by them, and they were the only officials known either in their initiation, progress, or consummation. What was done in the course of their proceedings was done for them under their direction, and in subordination to their authority. This is not only apparent from the section prescribing their powers and duties, but also from the specific direction requiring them to cause the surveys, maps and profiles to be made, required by them in the course of their proceedings; and it is further confirmed, in the most explicit manner, by the succeeding section of the act which provides for the commissioners receiving, in addition to their own fees, all reasonable expenses for maps, surveys and plans. 2 Revised Laws, 422, § 189. There is, therefore, not only no provision giving the person or persons who may make surveys, maps, plans and profiles, under the employment of the commissioners, the right to demand compensation from the city, either by suit or mandamus, but, on the other hand, the right to receive the compensation for such services is by this section expressly confined to the commissioners. While the act of 1815 has prescribed some changes respecting some of the proceedings to be taken for opening parks and public squares, it has left the preceding law wholly unaffected in its provisions concerning this class of services. Laws of 1815, chap. 153. Compensation for them are claims against the commissioners, who alone are employed to receive the amount from the city, and disburse it among the subordinates employed by them, and to the same effect is Laws of 1862, chap. 483, § 5.

The proceedings are purely statutory, and that is the remedy prescribed by the terms of the law, by which the surveyor and the persons connected with his employment are to be remunerated for their services; and it is the only remedy afforded by the statute for such remuneration. And where that is the case, the rule is well settled that no other remedy than the one prescribed can be pursued. *Almy* v. *Harris*, 5 Johns. 175; *Stafford* v. *Ingersoll*, 3 Hill, 39; *Cook* v. *Kelly*, 12 Abb. 35; S. C., 14 id. 466; *Dudley* v. *Mayhew*, 3 N. Y. 9. The applications made by the relator, Bagley, were properly denied upon this ground. He was neither entitled to the writ of mandamus nor to the maintenance of any other proceedings whatsoever against the city nor any of its officers for the recovery

of his remuneration. His remedy is solely and exclusively that given by the statute, which contemplates and provides for the presentation of his claims by the commissioners as a portion of their expenditures, and its satisfaction by their disbursement of the amount received for that purpose. Whether even that remedy has not been lost by the taxation of the commissioners' bills without including those of the surveyors at the same time, it is not necessary now to decide.

The right of the commissioners to the writ of mandamus to enforce payment of their claims, arising out of the proceedings to straighten and widen Broadway, open Sixty-eighth street and extend Madison avenue, depends upon other provisions contained in the act of 1813, already referred to. It is claimed in their behalf that the right exists, whether their claims are payable under the terms of the act, directly out of the funds provided by the assessments, or may be enforced as general liabilities against the city. But even though demands against corporate officers or corporations themselves may, under certain circumstances, be enforced by mandamus, where an action for damages may also be maintained in favor of the claimants, the courts have not yet gone so far as to hold that it may be done where the action can be maintained for the recovery of money claimed to be due and owing. On the contrary, then, it is held that the action for the recovery of the money or debt due is entirely adequate and complete for the party's redress, and he is accordingly confined to that remedy. *People* v. *Mayor of New York*, 25 Wend. 680; *People* v. *Thompson*, 25 Barb. 75; *People* v. *Supervisors of Chenango*, 11 N. Y. 563; *People* v. *Supervisors of Fulton*, 14 Barb. 52. The claims presented for payment by the commissioners are very much like those adjudicated in these authorities, and for the enforcement of which the writ of mandamus was denied. They are claims for the recovery of definite and specific sums of money, and for that reason the appropriate subjects of ordinary actions at law, unless payable exclusively out of the fund created by the assessments. If demands due from the corporation could, as a general principle, be enforced by the writ of mandamus against one of its officers, there would be no need of a legal action for their recovery. The action would then become the exception, instead of the writ, as the latter is at present under well-settled principles of law. Besides, if the claims are due from the city, as other debts owed by it are, that of itself would be a good reason for

denying applications for their payment through the writ of mandamus against one of its officers.

By the statute under which the commissioners proceeded, the assessments for benefits derived by adjacent and other property owners from the improvements made are rendered the final source from which all payments are to be received. The expenses in the end are all to be borne by persons owning or interested in the property benefited. 2 Revised Laws, 419, § 185. But, before the funds can be derived from that source, expenditures are required to be made to persons who may be divested of their property for the purpose of making the improvements, and also to pay expenses incident to the proceedings themselves. Great injustice would often be produced by deferring their payment until the assessments could be collected. Accordingly, the legislature did not render their payment dependent upon that contingency. The amounts which might become due for these objects were not in the first instance required to be paid out of the funds derived from the assessments. But, for the payment of awards for property taken, proceedings by way of actions against the mayor, etc., were provided after the expiration of four months from the confirmation of the commissioners' report. 2 Revised Laws, 418, § 183. And as to the fees and expenditures of the commissioners, an unqualified duty of payment was imposed upon the same body. Id. 422, § 189.

It is claimed in behalf of the commissioners, that as the law provides expressly for a remedy by action in favor of the owners of property taken for the purposes of the improvements, and omitted to do the same for the recovery of the fees and expenses of the commissioners, an action for the latter cannot be sustained. But that result does not and cannot follow from this omission, if enough can still be found in the act to warrant an action at law in their favor, without the aid of the other provision. The point to be considered is, whether, under the settled principles of law relating to this subject, sufficient has been provided to secure to them the right to maintain actions at law in which their expenses and compensation can be recovered. That there has would seem to follow from the fact that no remedy against the fund to be produced by the assessments has either expressly, or by reasonable implication, been given them; and from the positive provision made, without qualification, that the compensation and reasonable expenses of the commissioners for maps, surveys, plans, clerk hire, and other necessary expenses

and disbursements, should be paid by the mayor, aldermen and commonalty of the city of New York; that the amounts paid should be included in the assessments made upon persons benefited by the improvement, and that the city should be re-imbursed from that source. 2 R. L. 419, 422, §§ 185, 189. By section 185 the moneys paid for charges and expenses of the estimate, assessment and report that may be made, and all such other expenses and disbursements and charges as may properly attend the proceedings taken to open, enlarge, extend or otherwise improve streets, are to constitute a claim for this re-imbursement. This provision clearly contemplates their payment before the collection of the assessments, and payment, too, by the mayor, aldermen and commonalty, for that is the body to be re-imbursed by the provision made. In this respect it is in complete harmony with the succeeding provision contained in the other section referred to, and that provides for the payment to be made by the city, and for including the amounts paid in the assessments. By these provisions the duty of the city to pay is rendered complete, not out of the assessments, but generally, and after payment, the amounts paid are to be re-imbursed to it from the assessments. It would be difficult to create such an obligation by clearer terms. No room appears to be left for doubt upon the subject.

That such an obligation to pay may be enforced by action, and that an action is the appropriate mode of enforcing it, is well sustained by authority. "If a new right is created by statute, and no remedy is prescribed for the party aggrieved by the violation of such right, the court, upon the principle of a liberal or comprehensive interpretation of the statute, will presume that it was the intention of the legislature to give to the party aggrieved a remedy by a common-law action for the violation of his statutory right, and he will be permitted to recover in an appropriate action founded upon the statute." *Clark* v. *Brown*, 18 Wend. 213, 220. This principle clearly includes the claims of the commissioners for their services and expenses in opening, extending and widening the streets referred to, and it is well sustained by other cases relating to the same subject. *Ewen* v. *Jones*, 6 Mod. 27; *Braithwaite* v. *Skinner*, 5 Mees. & Wels. 326, 327; *Dudley* v. *Mayhew*, 3 N. Y. 915; *Stafford* v. *Mayor, etc.*, 6 Johns. 1; S. C., 7 id. 541. Writs of mandamus were, therefore, properly denied in these applications of the commissioners on the ground mentioned in the orders appealed from.

It seems to have been supposed by the appellants' counsel that cases were before the court in which commissioners' claims were made for proceedings to locate and lay out the Riverside park. That, however, proves to be a misapprehension, and for that reason it is unnecessary to consider the effect of the provisions of the act of 1815 concerning such improvements.

The orders appealed from are right, and they should be affirmed, with costs.

*Orders affirmed, with costs.*